Reginald DERRICKSON, et al.

v.

CIRCUIT CITY STORES, INC.

No. CIV. A. DKC 95–3296.

United States District Court,
D. Maryland.

Feb. 1, 2000.

682

Warren K. Kaplan, The Washington Lawyers' Committee, Washington, DC, Joseph M. Sellers, Cohen, Milstein, et al., Washington, DC, Therese K. Francese, Howrey & Simon, Washington DC, Terry L. Sullivan, Howrey & Simon, Washington, DC, LaShanda D. Branch, Howrey & Simon, Washington, DC, Marlin Hamilton Smith Dohlman, Howrey & Simon, Washington, DC, Margaret M. Vierbuchen, Howrey & Simon, Washington, DC, Brian H. Corcoran, Howrey & Simon, Washington, DC, for Reginald Derrickson, Mohmed Ibrahim, Maxine James, Artis Kendall, Harold Moore, Stanley Sims.

Warren K. Kaplan, The Washington Lawyers' Committee, Washington, DC, Joseph M. Sellers, Cohen, Milstein, et al., Washington, DC, Patricia G. Butler, Howrey and Simon, Washington, DC, Matthew McManus Wolf, Howrey & Simon, Washington, DC, William R. O'Brien, Howrey & Simon, Washington, DC, Therese K. Francese, Howrey & Simon, Washington DC, David S. Wachen, Baker & Hostetler, LLP, Washington, DC, Marlin Hamilton Smith Dohlman, Howrey & Simon, Washington, DC, for Demeka Johnson.

John Arthur Pirko Law Office, Glen Allen, VA, David E. Nagle, LeClair Ryan, Richmond, VA, Kelvin L. Newsome, LeClair Ryan, Richmond, VA, Sharon Maitland Moon, LeClair Ryan, Richmond, VA, Deborah Swindells Donovan, LeClair Ryan, Richmond, VA, Joseph D. McCluskey, DeClair Ryan, Richmond, VA, for Circuit City Stores, Inc.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Plaintiffs bring this suit against their former employer, Circuit City, Inc., for alleged employment discrimination on the basis of race. In Count I, all six Plaintiffs (Derrickson, Ibrahim, Kendall, Moore, Sims and James) bring a claim for employment discrimination in violation of § 1981 for failure to promote, wrongful termination and/or retaliation. Plaintiffs Derrickson (Count II) and Ibrahim (Count III) further claim that Defendant violated Title VII in its conduct. Defendant moves for summary judgment on all claims on procedural grounds and on the merits. Defendant also moves to exclude the testimony of Plaintiffs' expert. The issues have been fully briefed, and a hearing was held on Defendant's motions on Friday, January 7, 2000. There are six individual motions for summary judgment pending; however, those motions have been consolidated for the purpose of this memorandum because the legal issues raised in each motion substantially overlap one another. For the reasons set forth more fully below, the court shall GRANT the motions IN PART and DENY the motions IN PART.

### I. *Scope of Section 1981*

#### A. Claims Stemming from At–Will Employment

■ As an initial matter, Defendant argues that it is entitled to summary judgment on all § 1981 claims because § 1981 does not encompass at-will employment contracts. This argument is without merit as the Fourth Circuit has already decided this issue in *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018–19 (4th Cir. 1999) ("Having concluded that an at-will employment relationship is contractual, we hold that such relationships may therefore serve as predicate contracts for § 1981 claims."). Defendant relies upon *Hawkins v. Pepsico, Inc.,* 10 F.Supp.2d 548 (M.D.N.C.1998) which reached the opposite result before the decision in *Spriggs.* It is contrary to basic legal principles to assert that this court should follow *Haw-*

*kins,* not *Spriggs,* on the basis that "this issue will be revisited by the Fourth Circuit when it considers the appeal in *Hawkins.*" Defendant's Motion for Summary Judgment on Claims of Maxine James 11, n.9. *Spriggs* is currently the law in the Fourth Circuit, and this court will properly follow the mandate of the Court of Appeals that at-will employment contracts may create claims under § 1981.

### B. Retaliation Claims

■ Defendant also raises the argument that retaliation claims are not cognizable under § 1981. In 1989, the Supreme Court ruled in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), that § 1981's protections extend only to the formation of contracts, not "breach of the terms of the contract or imposition of discriminatory working conditions." *Id.* at 177, 109 S.Ct. 2363. However, following *Patterson,* the Civil Rights Act of 1991 substantially broadened the language and scope of § 1981 to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). Congress made clear that the amendments include claims of retaliation: "Section 210 would overrule *Patterson* by adding at the conclusion of section 1981 a new subsection (b).... The list set forth in subsection (b) is intended to be illustrative rather than exhaustive. In the context of employment discrimination, for example, this would include, but not be limited to, claims of harassment, discharge, demotion, promotion, transfer, retaliation, and hiring." H.R.REP. No. 102–40(I), at 92, *reprinted in* 1991 U.S.C.C.A.N. 549, 630; *see also Andrews v. Lakeshore Rehab. Hosp.,* 140 F.3d 1405, 1412 (11th Cir.1998) (finding cognizable retaliation claim under § 1981); *Carney v. American Univ.,* 151 F.3d 1090, 1094–95 (D.C.Cir.1998) (assuming without deciding that retaliation claim may proceed under § 1981); *Settle v. Baltimore County,* 34 F.Supp.2d 969, 984 (D.Md. 1999) (Davis, J.) (same). Following this

history, the court will allow Plaintiffs to proceed with claims of retaliation under § 1981.

## II. *Standard of Review*

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Pulliam,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex,* the Supreme Court stated:

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

Courts must take special care when considering a motion for summary judgment in an employment discrimination case because "motive often is the critical issue." *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir. 1987) ("[S]ummary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense." (quoting *Smith,* 597 F.2d at 414)). In *Thornbrough v. Columbus & Greenville Railroad Co.,* 760 F.2d 633 (5th Cir.1985), the Fifth Circuit cautioned:

[S]ummary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent. Of-

ten, motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder.

*Id.* at 640–41 (citations omitted). It is with this caution in mind that the court addresses Defendant's motion for summary judgment.

### III. *Timeliness of Claims*

■ Defendant objects to the timeliness of many of Plaintiffs' claims. In response, Plaintiffs raise several common arguments: (1) Defendant signed a tolling agreement with respect to Plaintiffs that extends all limitations periods over a year; (2) the applicable statute of limitations for § 1981 claims allows four years, not two or three years as Defendant states; and (3) acts of discrimination in early years fall under the "continuing violation" exception to the statute of limitations.[1]

### A. Tolling Agreement

■ With respect to all claims and independent of which statutes of limitations apply, Plaintiffs argue that Defendant is bound by a voluntary tolling agreement. On June 27, 1994, Circuit City and lawyers from the Washington Lawyers' Committee and Shaw, Pittman, Potts & Trowbridge entered a "Tolling and Confidentiality Agreement."[2] The agreement called for the parties to make a good faith effort to settle the dispute concerning allegations of discriminatory employment practices at Circuit City. To that end, the parties agreed to exchange information, maintain confidentiality and meet to discuss the allegations. Furthermore, Section 3 states:

> Circuit City agrees that the running of all statutes of limitations, laches, or other arguments of estoppel, as may be provided by statute or otherwise, applicable to the alleged class claims which have not run as of April 19, 1994 will be suspended between April 19, 1994 and the Termination Date of this Agreement.

The termination date of the agreement is defined as "the 10th calendar day after the date either party serves written notice that it intends to terminate this agreement." ¶ 6. Plaintiffs filed the instant suit and terminated the agreement on October 31, 1995.

■ Agreements to toll applicable statutes of limitations are not unusual and are generally upheld. *See, e.g., Martin Marietta Corp. v. Gould,* 70 F.3d 768, 771 (4th Cir.1995); *Sheet Metal Workers Int'l Assoc. v. Sweeney,* 29 F.3d 120, 122 (4th Cir.1994); *FDIC v. Cocke,* 7 F.3d 396, 404 (4th Cir.1993); *Milton Co. v. Council of Unit Owners of Bentley Place Condominium,* 121 Md.App. 100, 117, 708 A.2d 1047, 1055 (1998), *aff'd,* 354 Md. 264, 729 A.2d 981 (1999). Defendant's only argument to defeat this contract is that the tolling agreement by its terms only encompasses "alleged class claims," not the individual claims in this case.[3] However, the purpose

---

1. Plaintiffs correctly assert that even if acts of discrimination prior to the limitations period may not be brought as claims, they may be introduced at trial as evidence of violations during the limitations period. *See Warren v. Halstead Indus., Inc.,* 802 F.2d 746, 753 (4th Cir.1986) ("Even where such past discriminatory acts are time-barred for purpose of a particular claim, the Supreme Court has stated that this type of showing 'may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue.'" (quoting *Holsey v. Armour & Co.,* 743 F.2d 199, 207–08 (4th Cir.1984) (citing *United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)))). In particular, acts of prior discrimination may be rele-

vant to Plaintiffs' proof that Defendant's articulated reasons for its actions are pretextual. *Id.*

2. Attorneys at Howrey & Simon later replaced those from Shaw, Pittman, Potts & Trowbridge.

3. Defendant cites Judge Spencer's opinion in a Circuit City case in the Eastern District of Virginia, which is not relevant here. In that case, the court rejected the same tolling agreement as not applying to those plaintiffs because the tolling agreement only encompassed claims of "former and present employees of Circuit City" while the plaintiffs were individuals who had never been hired by Cir-

of the tolling agreement was to allow for settlement discussions, and it defies reason that Defendant would have contemplated settlement with the class while allowing individual claims to go forward. Furthermore, the alleged class claims contemplated by the tolling agreement are the same as those presented on an individual basis in the instant case.[4] Therefore, the tolling agreement shall apply to the limitations periods of all claims between April 19, 1994 and October 31, 1995.

## B. Length of the Limitations Period

With respect to the claims under § 1981, Defendant argues that Plaintiffs are bound by the state statute of limitations for civil actions, citing *Burnett v. Grattan*, 468 U.S. 42, 46, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984) (court must select state statute of limitations governing an analogous cause of action, not in conflict with the policies and goals of the Civil Rights Acts). Under this traditional rule, Plaintiffs' claims would be restricted by either Maryland's three-year statute of limitations or Virginia's two-year statute of limitations.[5]

In support of a longer limitations period, Plaintiffs urge that 28 U.S.C. § 1658, taken together with the Civil Rights Acts of 1991, supersedes the holding of *Burnett*, creating a four-year limitations period for their claims. In 1990, Congress created a uniform federal statute of limitations:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658. Under § 1658, any Act of Congress enacted after December 1, 1990 will carry a four-year statute of limitations, absent contrary language. Plaintiffs argue that § 1658 applies to § 1981 because, although originally enacted in 1866, § 1981 was substantially amended by Congress in 1991 to broaden its scope under two new subsections. Plaintiffs would have this court deem the creation of the additional subsections an "enactment" within the meaning of § 1658. None of the Courts of Appeals have addressed the question of § 1981's limitations period in the wake of the Civil Rights Act of 1991. The district courts are divided with respect to whether the re-enactment of § 1981 triggered the application of § 1658. *Compare Rodgers v. Apple South, Inc.*, 35 F.Supp.2d 974 (W.D.Ky.1999) (applying § 1658 to § 1981); *Miller v. Federal Express Corp.*, 56 F.Supp.2d 955, 965 (W.D.Tenn.1999) (same); *Alexander v. Precision Machining, Inc.*, 990 F.Supp. 1304 (D.Kan.1997) (same); *and Stewart v. Coors Brewing Co.*, 1998 WL 880462 (D.Colo.1998) (same) *with Zubi v. AT&T Corp.*, 1999 WL 334916 (D.N.J.1999) (finding § 1658 inapplicable to § 1981); *Davis v. California Dep't of Corrections*, 1996 WL 271001, at *20 (E.D.Cal.1996) (same); *Lasley v. Hershey Foods Corp.*, 35 F.Supp.2d 1319, 1322 (D.Kan.1999) (same); *Williams v. Home Depot, U.S.A., Inc.*, 1999 WL 788597, at *4 (E.D.Pa.1999) (same); *Chawla v. Emory Univ.*, 1997 WL 907570, at *14 (1997) (same); *Jackson v. Motel 6 Multipurposes, Inc.*, 1997 WL 724429, at *2 (M.D.Fla.1997) (same); *Mohankumar v. Dunn*, 59 F.Supp.2d 1123, 1132 (D.Kan.1999) (same); *Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1269 (M.D.Ala.1998) (same); *and Jones v.*

---

cuit City and claimed discriminatory hiring practices. *See McKnight v. Circuit City Stores, Inc.*, Civil Action No. 3:95CV964, Memorandum Opinion (February 26, 1996). It is clear in this case that Plaintiffs, former employees of Circuit City, are the intended beneficiaries of the tolling agreement.

4. On June 17, 1996, this court issued an order denying Plaintiffs' motion to file a second

amended complaint as a class, concluding that the requirements of Fed.R.Civ.P. 23 were not met. (paper no. 52)

5. Both parties agree that, under the *Burnett* rule, Virginia's two-year statute of limitations applies to Plaintiff Ibrahim, a resident of Virginia who worked at Defendant's store in Springfield, Virginia. *See* Opposition for Mohamed Ibrahim at 20, n.12.

*R.R. Donnelley & Sons Co.,* 1999 WL 639180, at \*2 (N.D.Ill.1999) (same).

There is no clear authority for this court to rely upon with respect to the limitations period under § 1981. The legislative history of the Civil Rights Act of 1991 suggests that Congress believed that § 1658 did not affect the prior rule for determining the limitations period. *See* H.R.REP. No. 102–40(I), at 63, *reprinted in* 1991 U.S.C.C.A.N. 549, 601 ("But under[ ] 42 U.S.C. section 1981, which bars intentional race discrimination in employment as well as other contractual relations, victims have a longer period of time to commence suits. In the absence of an express limitations period in section 1981, courts applying the statute have looked to analogous state statutes of limitations."). However, some courts have still concluded that the expansion of § 1981 to include additional causes of action constituted a re-enactment comparable to a new act that falls within the scope of § 1658.

The court need not decide this question, for the application of § 1658 is not dispositive for the purpose of this motion. With the application of the tolling agreement, the limitations period of § 1981 claims under the traditional rule extends from April 19, 1991 to October 31, 1995 (or April 19, 1992 to October 31, 1995 in the case of Plaintiff Ibrahim). As described more fully below, an extension of the time period to reach even a year earlier is not determinative for the purpose of this motion.

## C. Continuing Violation

██ Plaintiffs allege that even violations falling outside of the limitations period should be included in their § 1981 claim because they allege a continuing violation of the law. A continuing violation may be found where there is either an ongoing practice or pattern of discrimination or a series of related acts emanating from the same discriminatory animus. *See Redding v. Anne Arundel County,* 996 F.Supp. 488, 490 (D.Md.1998). Evidence of a pattern or policy of discrimination in the context of promotion decisions may establish a continuing violation and make claims of failure to promote outside of the limitations period viable. *See* 4 LEX K. LARSON, EMPLOYMENT DISCRIMINATION § 72.08[5][c] (2d ed.1999); *Davis v. Richmond, Fredericksburg & Potomac R.R. Co.,* 803 F.2d 1322, 1326 (4th Cir.1986) (recognizing a continuing violation from 1976, when plaintiff first applied for a promotion to engineer, until her suit in 1983); *Palmer v. Kelly,* 17 F.3d 1490, 1496 (D.C.Cir.1994) (holding that Mayor's policy favoring blacks for promotions constituted a continuing violation); *Messer v. Meno,* 130 F.3d 130 (5th Cir. 1997) (remanding for district court to determine if refusals to promote were systematic such to fall under the theory of continuing violation); *Young v. Will County Dep't of Pub. Aid,* 882 F.2d 290, 292 (7th Cir.1989) (finding allegation of continuing violation with respect to harassment and denial of promotions to older workers to satisfy timeliness requirements). In this case, Plaintiffs do assert a continuing pattern and practice of discrimination in promotions of black employees.

The frequently-cited rationale for the law of continuing violation is that a plaintiff may not know of his claim until the cumulation of a long period of discrimination makes clear the violation. *See Messer,* 130 F.3d at 135 ("Thus, a plaintiff can avoid a limitations bar for an event that fails to fall within the statutory period where there is '[a] persisting system of discrimination practices in promotion or transfer [that] produces effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time.'" (quoting *Glass v. Petro-Tex Chem. Corp.,* 757 F.2d 1554, 1561 (5th Cir.1985))). In the instant case, Plaintiffs may not have realized Defendant's allegedly discriminatory practices until they and other African–American colleagues had been denied promotions over a period of time. The lack of formal application procedures for promotion would make it difficult for an employee to identify discrimination. *See* Opposition to Motion to Exclude Exhibit 5, Deposition of Edward J. Brett at 158 (outside of sometimes being placed

on an Individual Development Plan, a sales counselor has no indication that they are being considered for a promotion).

Defendant cites two district court opinions in particular to support its position that denials of promotion must be viewed as discrete acts, not continuing violations. Yet both cases are distinct from the instant case because plaintiffs in the two cases did not allege a pattern or practice of discrimination. *See Soble v. University of Maryland,* 572 F.Supp. 1509, 1516 (D.Md.1983) (plaintiff's counsel described the events as "a series of distinct discriminatory acts" and presented "nothing to indicate any plan or practice of sex discrimination"); *Boarman v. Sullivan,* 769 F.Supp. 904, 908 (D.Md.1991) ("Because [plaintiff] has not produced any evidence of a pattern or practice of sex discrimination in the context of promotion decisions, the failures to promote must be considered discrete acts...."). Although *Etefia v. East Baltimore Community Corp.* correctly states that "attempts at promotion are usually viewed as discrete employment acts," 2 F.Supp.2d 751, 757 (D.Md.1998), the instant case presents a number of employees alleging denials of promotion as a part of a pattern of discrimination over an extended period of time. Therefore, Plaintiffs may assert a theory of continuing violation to include related, otherwise-untimely claims.

However, even if the case involves a continuing violation, the law still requires an actual violation within the limitations period. *Hill v. AT & T Technologies, Inc.,* 731 F.2d 175, 179–80 (4th Cir.1984) (claiming a "continuing violation" is not "a talismanic or shibboleth term automatically relieving a claimant of any obligation" to comply with limitations period). If the court finds any claim within the limitations period survives summary judgment, then Plaintiffs may continue to pursue those claims that are related to the pattern or practice alleged. The application of continuing violation theory must be analyzed on a case-by-case basis within the context of each individual plaintiff's case.

## IV. *Motion to Exclude*

■■■■ Plaintiffs seek to introduce an expert report prepared by Dr. James Medoff, a professor of labor and industry at Harvard University. Defendant has moved to exclude the entire report (paper no. 216). The expert report is in three parts: the first part addresses comparative wages for black and white employees at Circuit City; the second part presents comparative data on promotional opportunities for the two groups of employees; and, in the third part, Dr. Medoff presents his essay on "Enlightened Equal Employment Opportunity Practices." All expert testimony offered pursuant to Federal Rule of Evidence 702 must be both reliable and relevant. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999).

The court will GRANT the motion to exclude the third part of Dr. Medoff's report. The essay on "enlightened" employment practices is nothing more than a five-page summary of Dr. Medoff's experiences providing consulting services for IBM and the Boston Globe. Through these experiences, Dr. Medoff develops a theory of what employment practices may prevent discriminatory actions. In its final page, Dr. Medoff provides a sole conclusory opinion with regard to Defendant:

> I have reviewed documents and depositions relating to Circuit City's employment policies and practices. From this review, it is not surprising to me that a quantitative analysis of Circuit City's employment statistics indicates that black employees at the company do not have the same employment opportunities as their white counterparts.

The court finds that Dr. Medoff's opinion on what employment practices at IBM and the Boston Globe reduced discrimination is irrelevant to whether Circuit City discriminated in violation of Title VII and § 1981. In fact, the essay's only possible relevance to this case is that it may show Dr. Medoff's bias to put forth data that supports his own "enlightened" employment theory.

Further, Dr. Medoff admits in his deposition that he is not an expert in, or even familiar with, Circuit City's employment practices, the ones at issue in this case. See Deposition 1 at 50–51, 67–78. Therefore, the court will exclude this document as both irrelevant and unreliable for the purposes of Plaintiffs' proof.[6]

The court will defer deciding at this time the admissibility of the first part of Dr. Medoff's report, with regard to the relative compensation of black and white employees. None of the plaintiffs have brought a claim for discrimination in compensation. However, Plaintiffs argue that comparative compensation is indicative of differences in promotion rates. The court finds that the report is reliable in its methodology, but its relevance will need to be determined in light of other evidence. At the present time, the court will DENY the motion to exclude the compensation data, while still reserving the issue for decision at trial.

■■■■ Finally, the court will also DENY the motion to exclude the second part of the report relating directly to promotions. "Statistics can provide important proof of employment discrimination." *Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994) (statistics are "unquestionably relevant" in context of disparate treatment). Such evidence is relevant to both establish a prima facie case by creating an inference of discrimination and show that the defendant's articulated nondiscriminatory reason is pretextual. *Id.* As the Fourth Circuit explained:

Statistics with regard to the defendant's employment policy and practice may be

helpful to a determination whether its action in a particular case conformed to a general pattern of discrimination. Although statistics cannot alone prove the existence of a pattern or practice of discrimination, or even establish a prima facie case shifting to the employer the burden of rebutting the inference raised by the figures, "[s]tatistical analysis served and will continue to serve an important role' in cases in which the existence of discrimination is disputed."

*Warren v. Halstead Indus.*, 802 F.2d 746, 753 (4th Cir.1986) (internal citations omitted).[7] Using data for 1989 to 1995, provided by Defendant, Medoff concludes that African–American sales counselors, sales managers, or store managers had a 44% lower likelihood of being promoted than their white counterparts. (In other words, white employees had a 79% higher likelihood of being promoted.) These conclusions have unquestionable relevance to the failure to promote claims that Plaintiffs present.[8]

■■■■ Defendant argues that Dr. Medoff's failure to include store location as a variable in his multiple regression analysis renders his conclusions unreliable. Multiple regression analysis is an accepted method of demonstrating the influence of variables, such as race, education, or experience, on another variable, such as promotions. *See McCleskey v. Kemp*, 481 U.S. 279, 294, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). "While the omission of variables from a regression analysis may render the analysis less probative than it otherwise might be, it can hardly be said,

---

6. Defendant may wish to use the report in cross-examination to demonstrate bias.

7. Evidence of a pattern or practice of discrimination may very well be useful and relevant to prove the fourth element of a prima facie case, that the individual's adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination, or that the employer's articulated reasons for the adverse action were merely pretext, or to establish the plaintiff's ultimate burden. However, statistics alone cannot establish a prima

facie case of individual disparate treatment, for all four elements of a prima facie case must be established.
*Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 761 (4th Cir.1998), *vacated on other grounds*, —— U.S. ——, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999).

8. With regard to Plaintiff James, who only raises at this time a claim of retaliation in the form of demotion, the expert report on compensation and promotion may not be relevant and therefore may not be admissible at trial.

absent some other infirmity, that an analysis which accounts for the major factors 'must be considered unacceptable as evidence of discrimination.'" *Bazemore v. Friday,* 478 U.S. 385, 402, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (export report admissible to prove disparities in salaries of white and black employees although report did not account for location). While it is true that there may "be regression so incomplete as to be inadmissible as irrelevant," such is not the case in this instance. *Id.* n. 10. Dr. Medoff accounted for education, experience and job title in his model. According to Plaintiffs, location may be affected by discrimination, and therefore its exclusion from the regression analysis produces a more reliable result. *See* 45C AM.JUR.2D *Job Discrimination* § 2802 (1993) ("While primary factors that influence the dependent variable should be included, it is important to exclude factors which themselves could be affected by discrimination, such as subjective promotion criteria." (citing *Valentino v. United States Postal Serv.,* 511 F.Supp. 917 (D.D.C. 1981))). Furthermore, Plaintiffs present evidence to dispute that location played a role in the promotion process. *See* Opposition to Motion to Exclude, Exhibit 5, Deposition of Edward J. Brett at 157, 168–69. *Compare Bazemore,* 478 U.S. at 402, 106 S.Ct. 3000 (allowing expert report where Plaintiffs presented evidence to rebut contention that location variable played a role in salary disparities) *with Coward v. ADT Sec. Sys., Inc.,* 140 F.3d 271, 274 (D.C.Cir.1998) (finding the plaintiffs' expert report to be flawed where it failed to account for the variable of job title which, by their own theory, was a "major factor") *and Smith v. Virginia Commonwealth Univ.,* 84 F.3d 672, 676–77

(4th Cir.1996) (holding regression analysis insufficient as a basis for summary judgment where defendant's report failed to take into account factors defendant admitted were considered). Finally, Dr. Medoff did run the regression analysis to include store location as a variable and still found promotional differences to exist favoring whites. However, because the location variable reduced the sample sizes, many of the results were statistically insignificant. *See* Plaintiffs' Supplement dated January 18, 2000, Table B3 (showing a statistically significant difference favoring whites at Wheaton, Landover and Glen Burnie stores; an insignificant difference favoring whites at Springfield and Golden Ring stores). For the reasons stated, the court finds that Dr. Medoff's report on promotional statistics is both relevant and reliable, and therefore will DENY the motion to exclude.

## V. *Discussion*

Plaintiffs are a group of former employees at Circuit City, Inc. stores in the Baltimore–Washington area. Plaintiffs Derrickson, James, Kendall, and Sims are residents of Maryland while Plaintiffs Ibrahim and Moore are residents of Virginia. Defendant is incorporated in the state of Virginia with its principal place of business in Richmond, Virginia. Plaintiffs represent several levels of sales employees at Circuit City.[9] With respect to all six cases, Plaintiffs offer Dr. Medoff's statistical evidence and the lack of objective promotion criteria as proof of discriminatory promotion practices.[10] All other proof is particular to the individual plaintiff.

---

**9.** The entry-level position in sales at Circuit City is the sales counselor. The next highest position is the sales manager, who oversees one of several departments within a store. Finally, each store has one store manager who in turn reports to a district sales manager overseeing several stores.

**10.** At the time of Plaintiffs' claims, Defendant had no formal posting and application process for promotion or objective promotion guidelines. Therefore it is unclear what weight may be put upon corrective actions, coachings, and IDPs. *See Holsey v. Armour & Co.,* 743 F.2d 199, 214 (4th Cir.1984) ("practice of using a white managerial staff who relied on unwritten subjective criteria for making promotion decisions" is evidence of pattern and practice of discrimination).

## A. Reginald Derrickson

### 1. Factual Background

Plaintiff Derrickson is an African–American male who worked for Circuit City from 1985 until 1993. At the time of his hiring in November 1985, Derrickson worked as a sales counselor in the Landover store. Derrickson alleges that Defendant discriminatorily failed to promote him from sales counselor to sales manager from 1986, when he first requested the promotion, until March 1988, when he was finally promoted. During that period, Derrickson was a "top sales person" at the Landover store, elected to the President's Club, an honor given to the top 10% of Sales Counselors, on several occasions.

Derrickson also performed well in the position of sales manager, named "Sales Manager of the month" out of a group of at least thirty in the market area for eight of twelve months in 1989. Derrickson requested a promotion to store manager, first in late 1988 and repeatedly throughout 1989, 1990, and 1991. However, Defendant failed to promote Derrickson during this period or place him in the Management Advanced Program ("MAP"), a four week training program for future store managers. Finally, in January 1991, Derrickson resigned.

Derrickson returned in February 1992, reinstated by Defendant as a sales manager at the Landover store. In April 1992, Defendant transferred Derrickson to another sales manager position in Marlow Heights, a less desirable location with predominantly African–American customers. In August 1992, Derrickson finally attended the MAP training. At its conclusion, he returned to sales manager in Marlow Heights where he received more favorable evaluations.

In January 1993, a store manager position opened in Glen Burnie, but a white female employee, Vicki Gonzalez, who had not participated in MAP, received the promotion. Derrickson complained to both his store manager and district sales manager about their failure to promote him. In the following months, Defendant increased the performance standards for Derrickson's departments at Marlow Heights, and Derrickson received unfavorable performance reviews. In March 1993, Derrickson received a corrective action report (a notice that the employee must improve or suffer termination). Finally, Derrickson voluntarily resigned for a second time in April 1993.

On June 10, 1993, Derrickson filed a charge with the Equal Employment Opportunity Commission ("EEOC"). On May 31, 1994, the EEOC issued a right to sue letter. The instant lawsuit followed in October 1995, and now Plaintiff Derrickson pursues two claims:

(1) Did Defendant fail to promote Plaintiff Derrickson because of his race in violation of Title VII and § 1981?

(2) Did Defendant retaliate against Plaintiff Derrickson in violation of Title VII and § 1981?

### 2. Procedural Issues under Title VII

Defendant's first grounds for summary judgment, with respect to both claims under Title VII, is that Derrickson failed to file suit within 90 days of his notice of right to sue from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1) ("[W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ..."). However, the EEOC issued its right to sue letter on May 31, 1994, after the start of the tolling agreement on April 19, 1994. Therefore, any time limitation with respect to the right to sue letter does not apply for the period of tolling.

Title VII also provides that complainant must file a charge containing such information that the EEOC regulations require. 42 U.S.C. § 2000e–5(b). The regulations provide that charges contain the charging party; the name of the party charged if known; and a "clear and concise" statement of the facts. 29 C.F.R. § 1601.12(a). "Title VII does not require procedural exactness from lay complain-

ants." *Alvarado v. Board of Trustees of Montgomery Community College,* 848 F.2d 457, 460 (4th Cir.1988). "[T]he scope of a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission.'" *Hill v. Western Elec. Co.,* 672 F.2d 381, 390 n. 6 (4th Cir.1982) (quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970)). *Cf. Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir.1995) (declining to extend EEOC charge of discriminatory evaluations of employees to new claims of discrimination in hiring, promotion and training); *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996) (barring claims of age discrimination in wages where EEOC charge included only sex discrimination in promotions and stating "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.").

Plaintiff Derrickson filed a complaint with the EEOC on October 8, 1993. Derrickson's EEOC charge stated:

I. I was denied a promotion to the position of Store Manager in January 1993. After complaining that I was denied the promotion while a white was hired, I was retaliated against with respect to the goals set for my department. I resigned on April 6, 1993, after management informed me that I would be discharged if the performance of my department did not improve dramatically.

II. I was given no reason as to why I was denied the position of Store Manager nor why the goals for my department were raised after I complained about the promotion.

III. I believe that I have been retaliated against in violation of Title VII of the Civil Rights Act with respect to terms and conditions of employment and constructive discharge. I also believe that I

have been discriminated against in violation of Title VII of the Civil Rights Act with respect to denial of promotion to Store Manager.

Motion Exhibit F,1. The EEOC charge contains a claim of discrimination both with respect to failure to promote to store manager and retaliation. Any claims that Derrickson may raise with respect to promotions to sales manager from 1987 to 1988, denial of training, and store assignment are not properly encompassed in the charge and are therefore dismissed. The claims of failure to promote to store manager and retaliation reasonably relate to the EEOC charge and are properly before the court.

Defendant also argues that the EEOC charge fails to encompass the claims of the instant suit because the complaint goes beyond the time period of the EEOC charge. Under Title VII, a complainant must file a discrimination charge within at most 300 days of the occurrence of the alleged unlawful employment practice in order to seek relief. 42 U.S.C. § 2000e–5(e); *EEOC v. Commercial Office Prod. Co.,* 486 U.S. 107, 110, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988). Otherwise, a plaintiff may not pursue the alleged violation in any subsequent proceeding in federal court:

A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

*United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Derrickson's 300 day period ran from December 12, 1992 until he filed his EEOC charge on October 8, 1993. Derrickson has presented a timely claim of failure to promote in January 1993, when Vicki Gonzalez received a promotion to store manager. As discussed earlier, inci-

dents outside of the statutory period are not time-barred if they relate to a "timely incident as a 'series of separate but related acts' amounting to a continuing violation." *See Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir.1997) (quoting *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir.1980) (per curiam)). Along with a specific timely incident, Derrickson's complaint properly alleges a pattern of discrimination over a number of years at Circuit City. Thus, the court finds that the failure to promote to store manager after February 1992 (when Derrickson returned to the company) relates to the EEOC charge and shall be included in his claim.[11]

### 3. Failure to Promote

▮▮▮ In the context of employment discrimination cases, the court must apply the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 442 (4th Cir.1998). To establish a prima facie case of failure to promote in violation of § 1981 or Title VII, the plaintiff must show that he or she (1) is a member of a protected group; (2) applied for the position in question; (3) was qualified for the position; and (4) was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *McNairn v. Sullivan*, 929 F.2d 974, 977 (4th Cir.1991); *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir.1994); *see also Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 910 (4th Cir.1989) ("the framework of proof for disparate treatment claims—that is, whether the employer intentionally discriminated against the employee—is the same for actions brought under Title VII or § 1981"). Once the plaintiff establishes a prima facie case, the defendant may articulate a legitimate, nondiscriminatory reason for its action. Finally, if the defendant meets this burden of proffering a

nondiscriminatory reason, the plaintiff is given the opportunity to show the justification is merely a pretext for discrimination. The burden is upon the plaintiff to show pretext · by a preponderance of the evidence. In the promotion context,

a plaintiff may attempt to produce evidence that the defendant departed from its usual business procedure, or that the procedures by which a decision was made are suspect; plaintiffs may also point to evidence that there are no fixed or reasonably objective standards and procedures for evaluating the applicant. Evidence of a general atmosphere of discrimination may also be considered: proof of historically-limiting opportunity or harassment.

*Warren v. Halstead Indus.*, 802 F.2d 746, 753 (4th Cir.1986).

▮▮▮ In its motion for summary judgment, Defendant assumes *arguendo* that Derrickson is capable of demonstrating a prima facie case on this claim. However, Defendant offers a nondiscriminatory reason for selecting the white individual instead of Derrickson for promotion in 1992. Defendant argues that it did not promote Derrickson because the store manager vacancy at issue was not "in his territory" and that "Circuit City encourages district managers to promote store manager candidates to fill store manager vacancies within their territories." Motion at 16. Gonzalez was within the territory of the district manager who oversaw the new store manager position. Defendant alleges that Gonzalez was well-qualified and therefore the district manager "did not look outside his territory for additional candidates." *Id.* at 7.

Plaintiff presents evidence to raise a genuine issue for trial as to the reason for the promotional decision. First, citing *Warren*, Plaintiff puts forth both the expert testimony and the subjective pro-

11. The § 1981 limitations period also properly includes any failures to promote after Derrickson returned to Circuit City in February 1992. Even under Defendant's theory of a three year statute of limitations for § 1981, Derrickson's claim could include events after April 19, 1991.

motion standards as evidence that Defendant's proffered nondiscriminatory reason is pretext. Furthermore, Plaintiff disputes that promotions to store managers were restricted to district boundaries, but asserts that individuals were frequently promoted from the wider region. *See* Leary Deposition, Opposition Exhibit 21 at 79 (all candidates in Baltimore and Washington area considered for store manager positions). Plaintiff also disputes the qualifications of Gonzales relative to Derrickson. Gonzalez had not been to management training like Derrickson and received a coaching three days before her promotion. *See* Opposition Exhibits 29 at 238, 30. Because Derrickson has raised a genuine issue of material fact with respect to the promotion to store manager, the court will DENY summary judgment on this claim.

### 4. Retaliation

■ The *McDonnell Douglas* burden shifting scheme applies to retaliation claims as well. To prevail on a claim of retaliation under Title VII or § 1981, each Plaintiff must prove a three-part prima facie case: (1) that he engaged in protected activity; (2) that Defendant took adverse employment action against him; and (3) that a causal connection existed between the protected activity and the adverse action. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989). Once Plaintiffs establish this prima facie case, the Defendant may rebut by offering a legitimate nonretaliatory reason for the adverse action. *Id.* Finally, after Defendant offers a nonretaliatory reason, the burden of proof rests with Plaintiffs to establish by a preponderance of the evidence that the proffered reason is pretextual and the real reason for the action was retaliatory. *Id.*

■ A Title VII claim requires that "there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981). The Fourth Circuit

has explained that an adverse employment action includes "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir.1999).

■ Defendant moves for summary judgment on Derrickson's § 1981 and Title VII retaliation claims based upon a failure to prove (1) a protected activity and (2) adverse employment actions. Defendant argues that the elevation of Derrickson's performance standards, harsh and unfair evaluations, and the issuance of a corrective action do not constitute adverse employment actions, citing *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 755 (4th Cir.1996). Derrickson argues that the adverse action taken after his complaint about Gonzalez's promotion was a failure to promote him. However, Plaintiff left Circuit City within three months of Gonzalez's promotion and has produced no evidence that anyone received a promotion to store manager in that time period. The other retaliatory acts alleged, such as the corrective actions, do not rise to the level of adverse employment actions. Therefore, the court will GRANT the motion for summary judgment with respect to Plaintiff Derrickson's claim of retaliation under both Title VII and § 1981.

### B. Mohamed Ibrahim

### 1. Factual Background

Plaintiff Ibrahim is an African–American from Somalia who worked for Circuit City from October 1987 until December 1993. According to Ibrahim, Defendant initially refused to place Ibrahim as a sales counselor because of his accent, instead placing him in a warehouse position. Ibrahim received three raises within his first year, and, in November 1988, Defendant promoted Ibrahim to a sales counselor in the Wheaton store.

While a sales counselor, Ibrahim earned several honors for his performance, qualifying as a member of the President's Club

all but one month in 1989 and 1990. Defendant did not promote Ibrahim to sales manager although he repeatedly inquired about such a promotion. Furthermore, in January 1991, Ibrahim attempted to attend an internal management training course, but the instructors refused to allow him to attend. In March 1991, Defendant transferred Ibrahim at his request to the Springfield, Virginia store. During 1991 and 1992, he continued to receive much recognition for good work. In 1992, he received a coaching (a non-disciplinary employee-supervisor discussion concerning performance or work habits) for failing to replace price tags and a high level of customer returns. Several employees trained by Ibrahim were subsequently promoted to sales manager, but Ibrahim was not.

In January 1993, Ibrahim received an individual development plan ("IDP"), a document detailing specific tasks for an employee to perform for the purpose of training and promotion. Ibrahim alleges that his IDP contained an inordinately long and difficult list of tasks to perform, longer than his white colleagues, which he completed within five months. Ibrahim again requested a promotion to sales manager. However, according to Ibrahim, Defendant promoted a white employee, with less tenure and training, to the next available sales manager vacancy. During 1993, Defendant also promoted two white individuals from outside of the company to the position of sales manager trainee. Throughout 1993, Ibrahim's customer returns ranked at the bottom of sales counselors. In August and December 1993, Defendant issued corrective actions to Ibrahim for unacceptable levels of returns. Finally, in December 1993, Ibrahim resigned.

On May 3, 1994, Ibrahim filed a charge of discrimination for failure to promote with the EEOC in Virginia, alleging discriminatory treatment because of his race. The EEOC issued a right to sue letter on November 20, 1995. The instant lawsuit, filed October 30, 1995, contains the following claim of Plaintiff Ibrahim:

(1) Did Defendant fail to promote Plaintiff Ibrahim because of his race in violation of Title VII and § 1981?

## 2. EEOC Procedures

Ibrahim raises a claim of failure to promote based upon discrimination. He filed a charge of discrimination with the EEOC on May 3, 1994. In that charge, Ibrahim stated:

I. As a result of being continuously denied promotions to Supervisor, I resigned from my position of Salesperson on December 31, 1993. I had been employed since 1987.

II. My immediate supervisor did not give a reason for my being not promoted.

III. I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964 as amended with respect to promotion and constructive discharge because of my race, Black.

Opposition Ex. 33. Based upon this charge, Defendant argues that Ibrahim's claims relating to failure to promote to sales counselor should be dismissed as beyond the scope of the EEOC charge. Defendant also argues that any claims prior to the 300 day limit are untimely and therefore may not now be brought.

Ibrahim's EEOC charge properly includes a claim of failure to promote to sales manager, but not a failure to promote to sales counselor or failure to train. Furthermore, Ibrahim's allegations include an assertion of continuing violations which would overcome the limitations period, providing at least one claim exists within the 300 day limit, from July 5, 1993 to May 3, 1994. As discussed more fully below, Ibrahim has raised a claim that at least one white coworker was promoted to sales manager in the fall of 1993 that survives summary judgment. Therefore, the court finds that the Ibrahim's claim properly includes any failures to promote to store manager after 1989, when he first applied. The theory of continuing violation acts to

make the related, continuous acts of discrimination viable.[12]

### 3. Failure to Promote

■■■ Plaintiff Ibrahim brings this action against Defendant for violation of both § 1981 and Title VII in its failure to promote Ibrahim to sales manager.[13]

Defendant moves for summary judgment based upon an argument that Ibrahim cannot establish a prima facie case of failure to promote to sales manager. First, Defendant argues that Ibrahim has not shown that he applied for the position. The record contradicts this, however. Ibrahim indicated in his deposition that he began to express an interest in the sales manager position as early as 1989 and continued to assert his interest over his years at Circuit City. *See* Ibrahim Deposition at 174, 176, 195, 200. Second, Defendant argues that Ibrahim has failed to identify white individuals who were placed in the position instead. Defendant is correct that Ibrahim has failed to name specific individuals who were promoted to sales manager during the limitations period. However, he does refer to one specific white sales counselor who was promoted although he had less tenure and training that Ibrahim. The record indicates that sales counselors in the region were frequently promoted to sales manager. These facts in combination with Dr. Medoff's report give rise to an inference of discrimination sufficient to survive summary judgment. Finally, Defendant argues Ibrahim was not qualified for the position because of his poor performance. In particular, Defendant points to Ibrahim's poor record with regard to returns. Just as in the case of Plaintiff Derrickson, Defendant has put forth a single criterion for its decision not to promote the individual plaintiff. In his opposition, Ibrahim disputes returns being a factor in the deci-

sion to not promote him. After August 1993, Defendant argues that Ibrahim was not eligible for promotion because of the corrective action he received. Again, Plaintiffs have raised a genuine issue of material fact with regard to whether corrective actions do in fact preclude promotions. Given these issues of fact, the court will DENY the motion for summary judgment with regard to Plaintiff Ibrahim's promotion to sales manager.

### C. Maxine James

#### 1. Factual Background

Plaintiff Maxine James is an African–American female, employed by Circuit City from 1980 to 1994. From 1980 to 1985, James served in a number of positions at Defendant's stores, but by 1985, James worked as a manager of the ACE department, a position between sales counselor and sales manager, at the Beltsville store. She performed well and alleges that her supervisor told her she could expect a promotion. However, instead James was demoted in May 1985 to sales counselor while white employees were promoted. Only in 1990 did James receive a promotion to sales manager at the Beltsville store, and she performed well in that position. Eventually, she was transferred to the Wheaton store.

In September 1992, James alleges that she witnessed the Wheaton store manager, Pam Elwyn, racially discriminate against an African–American customer. At closing time, Elwyn refused to allow an African–American customer to enter the store to pick up a part he needed although on previous occasions white customers had entered the store at that time. Subsequently, James remained silent when Elwyn looked for support for her conduct from the staff. A month later, James al-

---

12. The same rationale applies to extend Ibrahim's § 1981 claims to include those from when he first applied for the position of sales manager.

13. Any claim that Defendant failed to promote Ibrahim to the position of sales manager trainee does not survive summary judgment because Ibrahim has presented no evidence that he applied for or indicated an interested in those positions.

leges that Elwyn and the district sales manager, Craig Ukman, gave instructions that sales managers should not "waste time" interviewing black candidates for the position of sales counselor. Ukman told James that the reason for the instruction was that the Wheaton store already had a sufficient number of black sales counselors. James then complained about what she perceived to be a discriminatory policy.

Following these incidents, James alleges that she suffered retaliation. Elwyn frequently reprimanded James for her work and put her in situations where she was unable to perform well. She increased James' work assignments and did not offer assistance; she sent James on errands and then reprimanded her about inadequate staffing. James alleges that she was subjected to increased scrutiny. By November 1992, James received a corrective action from Elwyn indicating that she failed to maintain a standard of cleanliness and readiness for customers. In early 1993, she received a "marginal" evaluation. Finally, in April 1993, Defendant demoted James from sales manager to sales counselor and transferred her back to the Beltsville store. In October 1994, James resigned from Circuit City.

Thus, the instant lawsuit raises the following issue:

(1) Did Defendant retaliate against Plaintiff James in violation of § 1981?

## 2. Retaliation

Plaintiff James brings a claim of retaliation under § 1981 for poor treatment by her supervisor—including a harsh work schedule, disciplinary notices, and lack of assistance—and demotion. Again, to prevail on a claim of retaliation under Title VII or § 1981, each Plaintiff must prove a three-part prima facie case: (1) that he engaged in protected activity; (2) that Defendant took adverse employment action against him; and (3) that a causal connection existed between the protected activity and the adverse action. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.

1989). Once Plaintiffs establish this prima facie case, the Defendant may rebut by offering a legitimate nonretaliatory reason for the adverse action. *Id.* Finally, after Defendant offers a nonretaliatory reason, the burden of proof rests with Plaintiffs to establish by a preponderance of the evidence that the proffered reason is pretextual and the real reason for the action was retaliatory. *Id.*

Defendant first argues that James fails to meet the prima facie case by demonstrating neither that she engaged in a protected activity nor that she suffered an adverse action. James offers two actions that she argues constitute protected activities under § 1981: the "silent" protest of her manager's racist treatment of a customer and the complaint to Craig Ukman concerning his comments on racial mix in the employees. At the hearing on this motion, Defendant conceded that James's complaint to Ukman constituted a protected activity, and therefore the court will assume that James has met the first prong. With respect to the second prong, James suffered a demotion, which clearly meets the standard for adverse action. *See Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir.1999). Although the demotion followed the protected activities by over six months, according to James, the demotion was merely a culmination of months of harassment and unfair criticism. Therefore, the court finds that James has offered proof of a connection between the two events in the intervening retaliatory actions. *See Karpel v. Inova Health Sys. Serv.,* 134 F.3d 1222, 1229 (4th Cir.1998) (little or no direct evidence of a causal connection is necessary to satisfy prima facie case).

Defendant offers a nondiscriminatory reasons for James' demotion: Defendant eliminated one sales manager position and chose to demote James for poor performance. To demonstrate Plaintiff's poor performance, Defendant cites several internal documents, including a letter, a corrective action, an individual development

plan ("IDP"), and an evaluation. Plaintiff disputes the validity of the information contained in the documents because all but one document that Defendant offers as proof of poor performance were written after the alleged protected activity. The one exception is a February 1992 letter of Craig Ukman to Maxine James, calling to her attention two areas of concern. The letter contains the following paragraph:

> My confidence level in your ability to manage a business remains high. I am reassigning you to the Wheaton store as the Audio manager. I ask that you seize the opportunity to address these two issues and assist Wheaton in growing the business. If improvement is not seen, disciplinary action up to termination may be taken.

Motion for Summary Judgment Exhibit 9. Given the mixed message of the letter, which appears to be a form letter, its import is unclear. James has offered her own documentation that her performance prior to the protected activities was good and appreciated.[14] Throughout this case, there remain questions of fact concerning the weight and nature of various types of communications—letters, IDPs, evaluations, coachings and corrective actions. James has come forth with evidence to raise an issue as to whether Defendant's proffered reason is pretextual. Therefore, the court will DENY summary judgment with respect to James's claim of retaliation under § 1981.

### D. Artis Kendall

#### 1. Factual Background

Plaintiff Kendall, an African–American male, worked for Circuit City from 1983 to 1993. From 1983 to 1987, Kendall worked as a sales counselor at the Beltsville store where his performance was recognized as excellent. He attended a management training program in 1984, which he passed, but was not promoted to sales manager. He alleges that a white colleague who

failed the training program was promoted instead to be Kendall's supervisor. An evaluation in 1986 stated that his job knowledge was exceptional and his quality of work good.

In 1987, Kendall transferred to the Wheaton store, where he worked until he suffered an illness in the summer of 1988. Kendall's illness caused him to spend four months in the hospital followed by two months at home. Defendant refused to pay Kendall his disability payments during the first month because he did not come to the Wheaton store to file the appropriate paperwork. . Kendall resumed work in 1988 at his former position.

In January 1989, Defendant transferred Kendall to a part-time sales counselor position at the Landover store after he submitted a physician's letter requesting a reduction in hours. Because the sales counselor position offers pay only in commissions, and the Landover store generates approximately a third of the revenue of the Wheaton store, the transfer caused Kendall to lose a great deal of income. Kendall requested to remain as a part-time worker at the Wheaton store, but Defendant rejected that request. In January 1991, Kendall submitted a letter from his physician indicating that he "has been advised to rest and avoid physical activity until April 1, 1992." Opposition to Summary Judgment, Exhibit 19. In 1990 and 1992, Kendall took a second and third medical leave of absence of several months due to his illness. In requesting his leave of absence in January 1992, Kendall wrote to his supervisor that he believed his "sales performance has slipped drastically" due to his condition. *Id.* at Exhibit 20.

Around December 1992, Kendall saw an advertisement in *The Washington Post* for a service (not sales) manager position at Circuit City and applied. Defendant did not hire Kendall for this position. Around this time, Circuit City records indicate that

---

14. In 1991, while still at Beltsville, James received an evaluation where her employer stated that she met requirements of her position. Opposition Exhibit 9. In January 1993, after her complaint, James received a much less favorable evaluation. Motion Exhibit 7.

Kendall's performance was no longer good. He received corrective actions in October and December 1992 for failing to meet standards of sales performance in four areas (returns, volume, margin and "ESP"), ranking last among thirty-two part-time video sales associates in the division. In February 1993, the district sales manager terminated Kendall based upon his overall substandard performance, in particular the low sales margins in the last quarter of 1992. In this lawsuit, filed October 1995, Kendall now raises the following claims:

(1) Did Defendant fail to promote Plaintiff Kendall because of his race in violation of § 1981?

(2) Did Defendant terminate Plaintiff Kendall because of his race in violation of § 1981?

## 2. Failure to Promote

Kendall's failure to promote claim can essentially be divided into three separate claims. The first is a claim of failure to promote to sales manager from 1983 to 1987. The second is a claim of failure to promote to sales manager from 1991 to 1993. Finally, Kendall claims he was unlawfully denied a promotion to service manager in late 1992.

Kendall's first failure to promote claim is untimely. Under even Plaintiff's generous four year statute of limitations, claims arising in 1987 would be untimely. Furthermore, a theory of continuing violation does not revive these claims because the four year gap when Kendall was sick and no longer pursuing a promotion destroys the continuity necessary for a continuing violation.

■■■ With respect to the failure to promote to sales manager from 1991 to 1993, Defendant has offered two legitimate non-discriminatory reasons for the failure to promote: substandard performance and part-time status. The record demonstrates that Kendall failed to work at a satisfactory level during this time. In January 1992, Kendall acknowledged that his sales performance was slipping "drastically." Furthermore, Plaintiff did not ap-

pear capable of full-time work. Although he states that he told his supervisor that he was willing to return to full-time status, his employment records do not indicate that Kendall really was able during that time period to return to work full-time and work satisfactorily. Plaintiff worked part-time at his doctor's request beginning in 1989, and his illness forced him to take leaves of absence in both 1990 and 1992. Plaintiff acknowledged that his illness affected his sales performance during this time period. His doctor's note in 1991 indicated that Plaintiff should "avoid physical activity" for another year. Plaintiff appears to argue in his brief that Defendant should have created a part-time sales manager position; however, the court will not question the business judgment of Circuit City in deciding to not hire part-time sales managers.

■■■ Finally, Plaintiff's claim that Defendant failed to promote him to service manager lacks merit for similar reasons. Plaintiff has failed to demonstrate that he was qualified for a full-time service manager position in 1992. Additionally, Plaintiff has provided no evidence that the position was eventually filled by a white applicant. Therefore the court will grant summary judgment on this claim. *See Vazquez v. Maryland Port Admin.*, 937 F.Supp. 517 (D.Md.1995) (plaintiff failed to meet prima facie case where he was rated the least qualified of all candidates).

For the reasons stated, the court will GRANT summary judgment for Defendant on all of Plaintiff Kendall's claims for failure to promote.

## 3. Wrongful Termination

The court will also GRANT summary judgment for Defendant on the claim of wrongful termination. Plaintiff has failed to provide proof of race discrimination with respect to his discharge by Defendant. Under the familiar *McDonnell Douglas* scheme, Plaintiff must establish a prima facie case of discriminatory discharge: (1) Plaintiff is a member of a

protected class; (2) he was discharged; (3) at the time of discharge he was performing his job at a level that met his employers' legitimate expectations; and (4) that the position remained open to similarly qualified applicants after her dismissal or that other employees who are not members of the protected class were retained under apparently similar circumstances. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir.1998). Plaintiff fails to provide any proof of the third element and therefore this claim shall not survive.

 Instead, Defendant has provided ample documentation of Kendall's shortcomings as a part-time sales counselor. His two corrective actions reflecting his sustained poor performance demonstrate that Defendant had good reason to terminate Kendall in early 1993. Kendall ranked at the bottom of part-time sales counselors in the region on multiple criteria. Furthermore, this is not a case where Defendant has focused on one measure while Plaintiff performed well in others. Here, Kendall performed poorly in all of the criteria set for employment. He has not offered evidence to the contrary or any similarly situated white employees who were not terminated. Therefore, the court finds that Kendall has failed to raise an issue of whether his termination was based upon race.

### E. Harold Moore

#### 1. Factual Background

Harold Moore, an African–American male, worked at Defendant's stores during two periods from 1984 to 1996. In 1984, Defendant hired Moore as sales counselor at the Tyson's Corner store, and he was promoted to operations manager in 1986. By 1988, Moore worked as an operations manager at the Wheaton store. At that time, district sales manager Ukman told Moore that he and other managers should hire fewer black applicants to "change the mix" of employees. Subsequently, Moore complained to company executives that he believed that racial discrimination existed

within Circuit City. Moore left Circuit City for approximately a year to work at a competitor, Computerland, until 1990 when he returned to work at Circuit City's corporate headquarters in Richmond, Virginia as a sales trainer.

In 1992, Moore requested a return to the Baltimore–Washington area in the hope of becoming a store manager. Moore served as a manager in training and then sales manager until September 1993, when Defendant promoted Moore to store manager at the Landover store. Moore alleges that the delay in his promotion was much longer than for equivalent white applicants. As the Landover store manager, Moore met many financial goals and demonstrated some success although he demonstrated a weakness in managing inventory. (The Landover store had a history of poor inventory management.) In March 1994, Moore's evaluation documented an average or above average rating in all categories. Moore sought to become a district manager. However, between September 1993 and August 1996, while Moore was a store manager, at least two white persons were promoted to district manager but Moore was not.[15]

Approximately June 1994, Moore told investigators that Circuit City maintained a discriminatory environment hospitable to racist employees. After that, Moore received increased scrutiny by corporate headquarters and unfounded criticisms. In April 1995, Defendant issued a corrective action to Moore with respect to his inventory management, and in June 1996 (one week prior to his deposition in this case) Moore received three simultaneous corrective actions. The first corrective action related to alleged poor service for two Circuit City employees posing as customers in May 1996. The second reprimanded Moore for an incentive program he created. The third related to overall performance although only two weeks before Moore received a satisfactory evaluation. In August 1996, Moore resigned from his

**15.** The exact dates of these promotions to district manager are unclear from the record.

position at Circuit City. Thus, this action now poses the following questions:

(1) Did Defendant fail to promote Plaintiff Moore to district manager because of his race in violation of § 1981?

(2) Did Defendant retaliate against Plaintiff Moore in violation of § 1981?

## 2. Failure to Promote

█ Defendant moves for summary judgment on Plaintiff Moore's § 1981 failure to promote claim based upon Moore's substandard performance and thus failure to meet the third prong of the prima facie case. Defendant has proffered that the reason Moore was not qualified for a promotion to district manager is his poor results in the area of inventory control. Moore has raised a genuine issue of material fact as to whether he was qualified for the position of district manager. Just as in the case of Plaintiffs Derrickson and Ibrahim, Defendant focuses upon a single criterion to justify its decision not to promote them. However, on other measures, Moore was a good store manager and, in combination with Dr. Medoff's statistical data, the evidence indicates a genuine issue for trial as to whether Moore was better qualified for the position of district manager than the white employees promoted in his place. Therefore, the court will DENY summary judgment with respect to whether Moore was discriminatorily denied a promotion to district manager. Because Moore did not become eligible for this promotion until 1994, timeliness is not at issue.

## 3. Retaliation

█ Plaintiff Moore brings a claim of retaliation under § 1981 for disciplinary notices ("corrective actions") given to him after the filing of this lawsuit and the failure to promote after he first complained of racism at Circuit City. Defendant argues that such actions do not constitute "adverse employment actions" within the scope of the law of retaliation. However, a failure to promote can constitute an adverse employment action. *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981)

(adverse employment actions include "ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating"). The corrective actions also, according to Defendant, preclude any future promotions. Defendant does not challenge any other aspect of Moore's prima facie case, and therefore the court will DENY summary judgment on this claim.

## F. Stanley Sims

### 1. Factual Background

Plaintiff Sims is an African–American male who worked as a sales counselor for Circuit City from July 1987 to December 1995. Sims alleges that Defendant repeatedly refused to promote Sims to a sales manager position despite his qualified record. Defendant hired Sims as a sales counselor in its Glen Burnie store. Within six months, Sims began to request a promotion to sales manager. In 1988, Sims attended a training course, completed an IDP and received an award for being the top sales counselor in the division in 1988. Nevertheless, white colleagues were promoted to sales manager while Sims was not.

Around 1989, Sims transferred to the Timonium store. There Sims became the lead video sales counselor in July 1990 and attended the training program for sales managers. However, again Circuit City did not promote Sims and in fact demoted him to sales counselor again. In July 1991, Defendant promoted Rita Bowen, a white employee, to sales manager. In mid–1991, Sims requested a transfer to the Golden Ring store in the hope that he could increase his opportunity for advancement. Again at the Golden Ring store, Sims performed well, ranking among the top sales counselors and received a 1992 Sales Excellence Award, among other honors. Sims applied for each vacancy for a sales manager without success while white employees were promoted to the position. Therefore, in this lawsuit, Sims brings the following claim:

(1) Did Defendant fail to promote Plaintiff Sims to sales manager because of his race in violation of § 1981?

## 2. Failure to Promote

Plaintiff Sims also raises only one claim against Defendant, violation of § 1981 for failure to promote over the eight years of his employment. Defendant has not questioned the merits of Sims' case in its brief. As previously explained, the court denied Defendant's motion to dismiss all claims under § 1981 for at-will employees. Defendant's argument that Sims' claims are untimely fails as well. Applying the shorter three-year statute of limitations and the tolling agreement,[16] any claims arising after April 19, 1991 are timely. Sims has alleged a violation during that period, including the promotion of Rita Bowen in July 1991. Therefore, the court will DENY summary judgment on Sims' claim.

Furthermore, under a theory of continuing violation, Defendant may bring to trial the entirety of his claim of failure to promote to sales manager, from when he first applied in 1988 until his resignation in 1995. Sims has met the first requirement for a continuing violation, namely a violation during the limitations period. Sims has also alleged that Defendant's failure to promote him to sales manager was a part of a pattern of discrimination shown by Dr. Medoff's data. Thus, all related claims are valid.

## VI. *Conclusion*

For the reasons stated, the court will GRANT Defendant's motion to exclude Plaintiff's expert witness in part and DENY it in part. Furthermore, the court will GRANT Defendant's motion for summary judgment on all claims with respect to Plaintiff Kendall. With respect to the remaining plaintiffs and claims, the court will GRANT the motions in part and DENY them in part. The remaining claims for trial are as follows:

(1) Did Defendant fail to promote Plaintiff Derrickson to store manager in violation of § 1981 and Title VII?

(2) Did Defendant fail to promote Plaintiff Ibrahim to sales manager in violation of § 1981 and Title VII?

(3) Did Defendant retaliate against Plaintiff James by demoting her in violation of § 1981?

(4) Did Defendant fail to promote Plaintiff Moore to district sales manager in violation of § 1981?

(5) Did Defendant retaliate against Plaintiff Moore by failing to promote him to district sales manager in violation of § 1981?

(6) Did Defendant fail to promote Plaintiff Sims to sales manager in violation of § 1981?

---

16. Defendant argues that the tolling agreement does not apply to Plaintiff Sims because he retained the attorneys in this case after the signing of the Tolling Agreement. However, the Tolling Agreement encompassed all potential class members, and, as an African–American employee of Circuit City, Sims would have been included in the group.