For the foregoing reasons, Clark's Motion to Dismiss Indictment is denied. An appropriate Order is attached.

**Norman L. NICHOLS, Jr., Plaintiff,**

v.

**CAROLINE COUNTY BOARD OF EDUCATION, Defendant.**

**Civil No. H–99–3352.**

United States District Court,
D. Maryland.

Nov. 28, 2000.

Bruce LeCompte Richardson, Weinstock Stevan Harris & Friedman, P.A., Baltimore, MD, for Plaintiff.

Norman L. Nichols, Jr., Federalsburg, MD, pro se.

Steven David Frenkil, McGuire, Woods, Battle & Boothe LLP, Baltimore, MD, Stephanie R. DeKraai, Miles & Stockbridge, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

Represented by privately retained counsel, Norman L. Nichols, Jr. ("Nichols") has filed a complaint in this Court seeking relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Plaintiff Nichols is an African–American male who for many years has been employed as a teacher by defendant Caroline County Board of Education (the "Board of Education"). Various claims of racial discrimination are alleged in plaintiff's complaint which seeks an injunction, monetary damages, attorneys' fees and costs.

Pursuant to Scheduling Orders entered by the Court, the parties have engaged in discovery. After discovery was completed and after defendant had filed a motion for summary judgment, Nichols discharged his attorney, and he has been proceeding *pro se* in this case since then. Defendant has submitted a memorandum, affidavits, the deposition of plaintiff Nichols and numerous exhibits in support of its motion.[1] Plaintiff Nichols has responded to defendant's motion by filing a pleading entitled "Motion to Dismiss Summary Judgment/Re-open Discovery." That pleading will be treated as plaintiff's opposition to defendant's pending motion for summary judgment. In support of his opposition, plaintiff has submitted three documentary exhibits but has not filed any affidavits, excerpts from depositions or other proper evidentiary materials required by Rule 56(e), F.R.Civ.P.[2]

The Court has now had an opportunity to review the pleadings and the parties' memoranda and exhibits. No hearing is deemed necessary for a decision on the pending motion for summary judgment. *See* Local Rule 105.6. For the reasons stated herein, defendant's motion for summary judgment will be granted.

I

*Background Facts and Procedural History*

For more than 30 years, Nichols has been employed by the Board of Education as a teacher of general and choral music at various schools in Caroline County. From some time in 1990 to the present, Nichols has been assigned to teach at Colonel Richardson Middle School ("CRMS"). In 1995, Deborah Chance ("Chance") became

---

1. At the request of the Court, counsel for the defendant has submitted a copy of the entire transcript of the deposition of plaintiff taken on July 28, 2000.

2. Recently, plaintiff has submitted additional documents, including a copy of a complaint filed by him in 1983 in the Circuit Court for Caroline County against the Board of Education.

Principal of CRMS and Charles Petrick ("Petrick") became Assistant Principal. Both Chance and Petrick are Caucasians. After the 1998–1999 school year, Janet Fountain, an African–American, became Principal and Gene Smith, a Caucasian, became Assistant Principal.

Beginning in September 1998 and continuing during the first part of 1999, conflicts arose between Nichols and both Chance and Petrick. Nichols alleges that these incidents resulted in racially discriminatory actions taken against him by his superiors. Nichols filed on June 21, 1999 a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). On August 6, 1999, the EEOC issued a Right to Sue Letter. This civil action was filed in this Court on November 4, 1999.

Pretrial proceedings in this case have been somewhat tortuous. After defendant had filed its answer, the Court entered a Scheduling Order on January 18, 2000. That Scheduling Order provided, *inter alia*, that depositions and all other discovery were to be completed within 120 days. Various other dates were set, including a date for the filing of motions for summary judgment and a date for a final pretrial conference.

On March 24, 2000, counsel for the parties jointly requested a 60 day extension of the discovery deadline. Counsel stated that the parties were working on discovery but that the process of gathering information had taken longer than expected. The Court accordingly entered a Revised Scheduling Order on March 27, 2000, extending until July 17, 2000 the time for completing depositions and all other discovery.

On June 20, 2000, counsel jointly requested another 45 day extension of the discovery deadline. The Court granted counsel's request but only for another 30 days, and the Court advised counsel that no further extensions would be granted. A Second Revised Scheduling Order was entered on June 21, 2000. That Order provided, *inter alia*, that depositions and all other discovery were to be completed by August 18, 2000.

Thereafter, defendant filed a motion to compel discovery pursuant to Local Rule 104.8. Concluding that defendant's motion was fully supported by its memorandum and by the numerous exhibits submitted, the Court granted defendant's motion to compel by Order dated August 8, 2000. Plaintiff was ordered to produce supplemental discovery responses by August 16, 2000. The Court advised counsel that because of this discovery dispute, the dates set forth in the Second Revised Scheduling Order of June 21, 2000 would be suspended.

A conference with counsel was held in chambers on September 7, 2000. Plaintiff's attorney and attorneys for defendant attended that conference. Counsel for defendant indicated that discovery in the case had been completed and that defendant intended to file a motion for summary judgment. Accordingly, the following schedule was set for the filing of and the briefing of defendant's motion for summary judgment: (1) defendant's motion was to be filed by September 22, 2000(2) plaintiff's opposition was to be filed by October 16, 2000; (3) defendant's reply to the opposition was to be filed by October 26, 2000; and (4) a hearing on defendant's motion for summary judgment was scheduled for November 3, 2000.

Defendant's motion for summary judgment was filed on September 22, 2000. On October 4, 2000, plaintiff Nichols signed and filed a *pro se* pleading entitled "Termination Notice." In that pleading, Nichols advised the Clerk that he had terminated the services of Bruce L. Richardson, Esq., as his attorney. Plaintiff further stated that Mr. Richardson had no authority to respond to defendant's motion for summary judgment. Nichols requested that the Court grant a suspension of all activity in the case until he could obtain other legal counsel.

On October 5, 2000, the Court granted plaintiff's request for a continuance in order to obtain new counsel, but only for a two week period. Nichols was advised by the Court that he should retain new counsel on or before October 20, 2000, and that a conference would then be scheduled to discuss the setting of new dates for the briefing of and for a hearing on defendant's pending motion for summary judgment. Nichols was advised that if he was unable to obtain new counsel by October 27, 2000, he would be required to proceed *pro se* in this case.

By letter dated October 20, 2000, Nichols informed the Court that he had been unable to retain new counsel, but that he was continuing his efforts to do so. He begged the Court's further indulgence. By letter dated October 25, 2000, the Court advised Nichols that it would not indefinitely extend the date set for him to obtain new counsel. Nichols was told that if he had not retained new counsel by October 27, 2000, the Court would require that he submit a *pro se* opposition to defendant's pending motion for summary judgment. Plaintiff Nichols was given until November 10, 2000 to file that opposition.

By letter dated October 29, 2000, Nichols advised the Court that, although he had met with another attorney, he had not been able to obtain new counsel. Nichols stated that "I will be having to proceed from this point *pro se.*" In view of the further delay occasioned by Nichols' continuing efforts to obtain new counsel, the Court gave him another extension until November 14, 2000 for the filing of his opposition to defendant's motion for summary judgment.

On November 14, 2000, plaintiff Nichols, proceeding *pro se,* filed a pleading entitled "Motion to Dismiss Summary Judgment/Re-open Discovery." That pleading

has been treated by the Court as an opposition to defendant's pending motion. Defendant has now timely replied to that opposition, and plaintiff in turn has recently submitted further argument and additional materials in support of his opposition to the pending motion.

In his opposition, Nichols complains in particular about a Joint Stipulation signed by his attorney and the attorneys for the defendant. Pursuant to that Stipulation, the parties agreed that plaintiff would not use or seek to use in this case evidence or information concerning alleged discrimination occurring outside the time period of August 15, 1998 through June 21, 1999, which was the date when plaintiff had filed his charge of discrimination with the EEOC.[3]

## II

### *Summary Judgment Principles*

It is well established that a defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show

**3.** On two prior occasions, in the late 1960's and early 1970's, the Board of Education had terminated the services of plaintiff. On each of these occasions, he had been later reinstated. Plaintiff did not previously challenge either one of these dismissals by filing a charge of discrimination with the EEOC.

that the defendant may be liable under the claims alleged. *See* F.R.Civ.P. 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett,* 477 U.S. at 323, 106 S.Ct. 2548.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd,* 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett,* 477 U.S. at 323–24, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett,* 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted.

### III

#### *Discussion*

From a reading of the complaint, it is difficult for the Court to determine precisely what claims under Title VII are being asserted in this case by plaintiff. Paragraphs 5 through 15 of the complaint occupy one page of the essentially three page pleading. Those paragraphs purport to allege various claims of racial discrimination. It is alleged that defendant required plaintiff to submit to additional discipline, restrictions and requirements not requested of other similarly situated employees and that in September 1998, the Board of Education improperly required plaintiff to provide a doctor's note for a sick day. It is further alleged that plaintiff has been subjected to continual attempts to interfere with his teaching and denigrate his abilities within the school system, that defendant has attempted to have plaintiff assume an improper teaching load and that the treatment received by plaintiff has resulted in denial of promotion, denial of required back pay and other consequences of such allegedly discriminatory action.

It is apparent that plaintiff has not complied with Rule 10(b), F.R.Civ.P. The complaint contains only one count, and although plaintiff is apparently attempting to assert several different claims of discrimination against defendant, he has not stated each of his claims in a separate count.

The Court will, however, construe the complaint liberally in light of statements made by plaintiff during his deposition. It

appears that plaintiff is here presenting (1) a claim of disparate treatment; (2) a claim of hostile work environment; (3) a claim of denial of promotion; and (4) a claim of denial of required back pay.

(a)

### Disparate Treatment

Nichols first contends that the Board of Education discriminated against him on the basis of his race in that he received treatment different from similarly situated white employees of the Board of Education. To prevail in a claim of disparate treatment, a plaintiff must establish a four element *prima facie* case: (1) that the employee is a member of a protected class; (2) that the employee was qualified for the job and that his job performance was satisfactory; (3) that in spite of his qualifications and performance, the employee suffered adverse employment action; and (4) that the employee was treated differently from similarly situated employees. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir.1989); *Raley v. Board of St. Mary's County Com'rs*, 752 F.Supp. 1272, 1278 (D.Md.1990).

Since Nichols is an African–American, he satisfies the first element. Viewing the evidence in the light most favorable to the plaintiff, the Court concludes that he has produced evidence indicating that he was qualified for his job and that his job performance was satisfactory. However, on the record here, plaintiff has not shown that actions taken by the Board of Education resulted in an adverse employment action taken against him.

■ In *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986), the Fourth Circuit noted that "employment discrimination laws require as an absolute precondition to suit that some adverse employment action have

occurred." The leading Fourth Circuit case dealing with the requirements for determining under Title VII whether an employer has taken an "adverse employment action" against a plaintiff is *Page v. Bolger*, 645 F.2d 227 (4th Cir.1981). In *Page*, the Fourth Circuit held that a court, in determining whether there has been discrimination with respect to "personnel actions" taken by the defendant, should focus on the question of whether there has been discrimination "in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensating." *Id.* at 233. There are "many interlocutory or mediate decisions" which have no immediate effect upon employment conditions and which were not intended to fall within the proscriptions of Title VII. *Id.* In *Munday v. Waste Management of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir.1997), *cert. denied*, 522 U.S. 1116, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998), the Court stated:

> In no case in this circuit have we found an adverse employment action to encompass a [particular] situation ... without evidence that the terms, conditions or benefits of [plaintiff's] employment were adversely affected.

■ Applying the principles of these Fourth Circuit cases to the facts of record here, this Court concludes that plaintiff has not produced evidence indicating that defendant took any adverse employment action against him as a result of any of the incidents upon which he relies. Plaintiff has submitted a list of various incidents commencing in September of 1998, and he contends that actions taken by representatives of defendant at the time of these incidents amounted to disparate treatment based on his race. He complains that he was required by Chance, the Principal of CRMS, to provide a doctor's note when he was absent at a county-wide professional development day;[4] that in the fall of 1998,

---

4. Nichols claimed that his contract did not require him to provide a doctor's note for his absence on the day in question. Chance, the principal of CRMS, disagreed.

Petrick, the Assistant Principal, complained about a religious text in Nichols' classroom; that in April, 1999, Petrick chastised Nichols when he removed a student from his classroom; that during the fall of 1998, the school inconvenienced him by locking for security reasons a door which Nichols had used to enter the school;[5] that a memorandum written by a guidance counselor contained offensive references to Nichols; and that he had several conflicts with Gene Smith, the new Assistant Principal during the 1999–2000 school year, mainly because Nichols believed that Smith did not correctly handle disciplinary actions taken by Nichols against students. Neither singly nor in the aggregate do these events constitute ultimate employment decisions actionable under Title VII.

None of the occurrences relied upon by plaintiff can be characterized as ultimate employment decisions involving hiring, granting leave, discharging, promoting or compensating. *Page,* 645 F.2d at 233. There is no evidence that Nichols was denied a promotion or back pay as a result of any of the incidents in question. The essential terms, conditions and benefits of plaintiff's employment at CRMS were not adversely affected by any of the conflicts he had with his superiors. Nichols remained at all times a teacher of general and choral music at CRMS, and his compensation and benefits were not affected.

It is quite apparent from the record here that there were continuing disputes and conflicts between Nichols and the Principal and Assistant Principal of CRMS. However, as noted by the Supreme Court, "Title VII does not prohibit all verbal or physical harassment in the workplace, ..." *Oncale v. Sundowner Offshore Services Incorporated,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). The Supreme Court has cautioned that careful attention must be given by a court to the requirements of Title VII in order to avoid

the risk of transforming the statute into "a general civility code for the American workplace." *Id.* Hostility directed at a plaintiff from supervisors or fellow employees does not therefore amount to adverse employment action. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.), *cert. denied,* 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997); *Kortan v. State of California,* 5 F.Supp.2d 843, 853 (C.D.Cal.1998).

On the record before it, this Court has concluded that plaintiff Nichols has not produced evidence establishing that defendant took adverse employment action against him as a result of any of the incidents relied upon. It is apparent from the record here that plaintiff Nichols is a disgruntled teacher who has had many conflicts with the principal and the assistant principal of the school where he has been employed. However, plaintiff's differences with his superiors have not resulted in any disciplinary actions taken against him which might be characterized as ultimate employment decisions under Title VII. Nor is there any indication that plaintiff's superiors acted with a racial motive when they called him to account from time to time. Nichols, therefore, cannot proceed to trial in this case on his claim of disparate treatment.

(b)

*Hostile Work Environment*

■ Racial harassment which creates a "hostile work environment" is actionable under Title VII because it amounts to discrimination in the conditions of employment. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 63–68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To establish a claim of hostile work environment, Nichols must prove (1) that the conduct in question was unwelcome; (2) that the alleged harassment was based on race; (3) that the harassment was sufficiently severe or pervasive to create an abusive working envi-

---

**5.** According to Nichols, it saved him some "steps" to use the locked door because it was

conveniently located near the place where he parked his car.

ronment; and (4) that there is some basis for imposing liability on the employer. *Middleton v. Frito–Lay, Inc.,* 68 F.Supp.2d 665, 671 (D.Md.1999); *White v. Federal Exp. Corp.,* 939 F.2d 157 (4th Cir.1991); *Swentek v. USAIR, Inc.,* 830 F.2d 552, 557 (4th Cir.1987).

■ In order to be actionable under Title VII, a racially objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To determine whether an employer's alleged conduct was sufficiently severe or pervasive to bring it within the proscription of Title VII, a court must examine the circumstances, including the frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *Beardsley v. Webb,* 30 F.3d 524, 529 (4th Cir.1994) (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367).

■ Applying these principles to the facts of record here, this Court concludes that plaintiff cannot establish a *prima facie* case of hostile work environment. The incidents relied upon by plaintiff were not sufficiently severe or pervasive to create an abusive working environment. He has relied on the following incidents: (1) that Chance requested that he produce a doctor's note to verify his absence at an event; (2) that Petrick shouted at him in the hallway, locked the door which he used to enter the school, and commented about a religious text on his piano; (3) that Smith did not discipline students appropriately; and (4) that a guidance counselor singled him out in an offensive manner in a memorandum concerning his disciplining of a student who had learning disabilities.

Whether considered separately or in combination, the incidents in question are not sufficiently severe or pervasive to satisfy plaintiff's burden of proof in this case. Most of the events in question were occurrences between a teacher and his supervisors interacting during the course of their employment. *See Oncale,* 523 U.S. at 81, 118 S.Ct. 998. At no time was the conduct in question physically threatening or humiliating. Moreover, the acts in question were too isolated and trivial to serve as a basis for a claim of hostile work environment. *See Carter v. Ball,* 33 F.3d 450, 461 (4th Cir.1994). Evidence of record does not exist indicating that the challenged conduct of his superiors unreasonably interfered with Nichols' work performance. Throughout the period of time in question, Nichols has continued to perform his employment duties in a reasonably satisfactory manner. Indeed, at his deposition, Nichols testified that, as a result of the incidents in question, the performance of his job was merely a B + rather than an A.

Finally, there is no evidence that any of the alleged acts of harassment were in any way connected with plaintiff's race. There is no evidence that any racially offensive statements were made by plaintiff's superiors during the confrontations in question. When asked at his deposition to indicate what facts existed suggesting that the actions of his superiors were based on his race, Nichols testified in conclusory terms that when anybody does anything to offend him, "they do it because I am who I am." That Nichols is an African–American and that his superiors are Caucasian is hardly proof that their actions were racially motivated. The Court cannot attribute a racial character to the disagreements and misunderstandings between the parties here based merely on Nichols' conjectural opinion. *See Hawkins v. Pepsico, Inc.,* 203 F.3d 274, 280–81 (4th Cir.2000).

For all these reasons, this Court concludes as a matter of law that the conduct of Nichols' superiors challenged by him in this case was not so objectively offensive as to alter the terms or conditions of his employment. Accordingly, his claim of

hostile work environment must likewise fail.

## (c)

### Other Claims

In his complaint, Nichols has also alleged that discriminatory actions taken by defendant resulted in the denial of a promotion and the denial of required back pay. There is no support in this record for either one of those claims.

■ In order to establish a *prima facie* case of discriminatory failure to promote, Nichols must show (1) that he is a member of a protected group; (2) that he applied for the position in question; (3) that he was qualified for the position and (4) that he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994); *McNairn v. Sullivan,* 929 F.2d 974, 977 (4th Cir. 1991). Evidence does not exist in this record indicating that Nichols applied for any particular promotional position nor that he was qualified for any such position. During his deposition, he conceded that he had not applied for any promotion since August 15, 1998, which, pursuant to that Joint Stipulation, was the agreed cut-off date for claims asserted by him in this case [6] (Tr. at 233). His denial of promotion claim must therefore fail.

In the charge which he filed with the EEOC, Nichols alleged that he had been denied deserved wages. However, he has presented no proof to this Court of any loss of pay. Nichols has not claimed that his pay was reduced as a result of any of the allegedly discriminatory incidents relied upon. Indeed, at his deposition he testified that he could not point to any action or decision of the Board of Education which resulted in lost wages. Moreover, when asked to quantify the amount of the lost pay suffered by him, Nichols was unable to provide any figures.[7] Accordingly, there is likewise no merit to plaintiff's lost wages claim.

■ In his opposition to defendant's motion, Nichols relies in part on events occurring in 1971 and 1972 when the Caroline County Board of Education dismissed him as a tenured teacher on grounds of misconduct in office.[8] However, by their Joint Stipulation, the parties have agreed that evidence or information concerning alleged discrimination occurring before August 15, 1998 would not be used by plaintiff in this case. Nichols argues that this Stipulation is "a fraud."

On the record here, the Court concludes that Nichols is bound by provisions of the Joint Stipulation signed by his attorney. The general rule is that there is a presumption that an attorney who enters his appearance for a party is authorized to act for that party. *Bethlehem Steel Corp. v. Devers,* 389 F.2d 44, 45 (4th Cir.1968); *Lovering v. Lovering,* 38 Md.App. 360, 362, 380 A.2d 668 (1977). Nichols has not produced "clear and convincing" evidence of a lack of authority. *Id.* On the contrary, evidence of record indicates that the Stipulation was authorized. Pursuant to established case law, Nichols was not entitled to rely on incidents occurring more than 300 days prior to the filing by him of a charge of discrimination with the EEOC. *Derrickson v. Circuit City Stores, Inc.,* 84 F.Supp.2d 679, 692 (D.Md.2000). The

---

**6.** Nichols further testified that in his estimation he has been demoted because his stature was reduced when he was assigned to teach health education at the direction of Janet Fountain who was principal of CRMS during the 2000–2001 school year. In his deposition, Nichols accused Fountain, an African-American, of harassment and intimidation.

**7.** In the suit filed by Nichols in state court in 1983, he sought damages in the amount of $20,000 for lost wages during the period of his suspension in 1971 and 1972. That suit was dismissed following a hearing on the demurrer filed by the Board of Education.

**8.** Nichols appealed his dismissal to the State Board of Education, which ordered on March 22, 1972 that his dismissal be treated as a suspension and that he be reinstated as a teacher.

Stipulation did no more than confirm the parties' understanding of the applicable law. The effect of the Stipulation was explained to Nichols by Mr. Richardson before the start of his deposition on July 28, 2000. It was signed by his attorney in the presence of Nichols before the deposition began and was entered as an exhibit at the deposition (Tr. at 5–6). In particular, it was noted on the record that the parties had agreed that evidence in the case was to be limited to 300 days prior to the filing by Nichols of his charge with the EEOC and that the cut-off date was therefore August 15, 1998. *Id.* Later, there was specific reference to the Stipulation when Nichols was asked whether he had been subjected to unequal terms and conditions of his employment on the basis of his race after August 15, 1998 [9] (Tr. at 119).

### (d)

### *Request for the Reopening of Discovery*

In the oppositions to defendant's motion filed by Nichols, he has requested that discovery be reopened. This request will be denied.

The parties engaged in extensive discovery before defendant filed its motion for summary judgment. Interrogatories were answered, documents were produced and the deposition of plaintiff Nichols was taken. Defendant produced a box full of documents in response to plaintiff's request for the production of documents. Two separate requests for extensions of the discovery deadline were granted by the Court. It is much too late to reopen discovery after defendant's motion for summary judgment has been filed and fully briefed by counsel for defendant. Moreover, the discovery now sought by Nichols is either time-barred or not relevant to the issues in this case.

9. Nichols' statement that he terminated his attorney's services "as soon as he became aware of the stipulation" is flatly contradicted by the record here. Nichols became aware of

### IV

### *Conclusion*

In sum, the Court has concluded that plaintiff has not in this case produced evidence establishing a *prima facie* case of racial discrimination under Title VII. Accordingly, plaintiff is not entitled to go to trial on any of the claims asserted by him in his complaint. The motion for summary judgment of defendant Board of Education will therefore be granted. An appropriate Order will be entered by the Court.

the Stipulation on July 28, 2000 but did not discharge his attorney until he filed his Termination Notice on October 4, 2000.