**Marjorie FINNEGAN Plaintiff,**

v.

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, et al., Defendants.**

**No. CIV. JFM–01–2595.**

United States District Court, D. Maryland.

Feb. 6, 2002.

458

Paul F. Newhouse, Towson, MD, for plaintiff.

Susan Howe Baron, Baltimore, MD, for defendants.

*MEMORANDUM*

MOTZ, District Judge.

The defendants, the Department of Public Safety and Correctional Services and the Division of Parole and Probation, have filed a motion to dismiss the complaint filed against it by plaintiff, Marjorie Finnegan. Finnegan alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") on the basis of sex, including claims of disparate treatment, hostile work environment and retaliation. For the reasons that follow, I will grant in part and deny in part the defendants' motion.

## I.

Finnegan began to work for the State of Maryland, Department of Public Safety and Correctional Services, Division of Parole and Probation as a Drinking Driver Monitor II in April 1997. (Compl.¶ 9.) On August 23, 1999, Finnegan was reassigned from the Montgomery County Office to the Baltimore County Office where she was supervised by Joe Dulney, Jim Zombro and Sandra Evert. (*Id.* ¶ 10.) In November 1999, Finnegan began dating a male co-worker. (*Id.* ¶ 12.) On several occasions in November 1999, Evert called Finnegan to inquire about the whereabouts or the work of the male co-worker. (*Id.* ¶ 13.) Evert also told Finnegan that Finnegan's co-workers did not like her and that they talked about Finnegan behind her back. (*Id.*)

On February 7, 2000, Finnegan was reprimanded and counseled for inappropriate conduct for having a discussion outside the courtroom at the District Court of Balti-

more County. (*Id.* ¶ 14.) Finnegan received a counseling statement based on a written complaint by a co-worker. Finnegan later proved that the co-worker filed a false report, but she was still reprimanded. A third employee who was male was also involved in the conversation outside the courtroom, but he was not reprimanded or counseled. (*Id.*)

On February 16, 2000, a male co-worker requested that Finnegan cover a court case for him. (*Id.* ¶ 15.) Finnegan informed the clerical staff as well as the supervisor of the Catonsville office that she would be in court. Evert called Finnegan several times while Finnegan was in court. When Finnegan returned to the office, she returned the calls from Evert. Evert reprimanded Finnegan for going to court and told Finnegan that she was to notify Evert whenever she left her work station. Additionally, on February 16, 2000, Evert called Finnegan and instructed her to see if a male co-worker was still at work. (*Id.* ¶ 16.) Finnegan complied with the request as soon as possible. Evert called Finnegan into her office the next day and questioned Finnegan about the male co-worker and Finnegan's cases. Evert allegedly became verbally abusive and told Finnegan that she was to follow Evert's orders immediately. (*Id.*) This verbal abuse allegedly continued for several months. (*Id.* ¶ 17.)

On February 24, 2000, Finnegan received a performance evaluation that reflected that she met or exceeded the standards of performance. (*Id.* ¶ 18.)

On May 11, Finnegan was allegedly required to fill in for another co-worker. (*Id.* ¶ 19.) Evert harassed Finnegan, claimed Finnegan was not at her appropriate work station and prevented Finnegan from seeing clients. Evert also demeaned and verbally abused Finnegan. (*Id.*)

Approximately two weeks later, Evert approached Finnegan and told Finnegan that she had been insubordinate and disrespectful and that such behavior would not be tolerated. (*Id.* ¶ 20.) Evert requested that Finnegan look for another job. On May 23, 2000, Finnegan resigned due to Evert's behavior and request that Finnegan work elsewhere. (*Id.*)

Within the next week, Finnegan initiated an internal complaint of discrimination. (*Id.* ¶ 21.) On June 1, 2000, Finnegan spoke with an employee of the internal Equal Employment Office ("EEO"), Mr. Roberts, and told him about the alleged discriminatory behavior of Evert and that she did not want to resign. Roberts instructed Finnegan to withdraw her resignation. On June 6, 2000, Roberts informed Finnegan that her resignation had been rescinded and that she was to report to work at the Towson office on June 19, 2000. (*Id.* ¶ 22.) On June 19, 2000, Finnegan reported to work at the Towson office. Finnegan was on the work schedule for the entire week. One hour into her work, an assistant director, Ms. Gover, informed Finnegan that she no longer had a job because she resigned. (*Id.* ¶ 23.) Finnegan was escorted off the premises in front of co-workers and others without being allowed to collect her belongings. (*Id.*) No other employee who did not file a discrimination complaint was similarly treated when terminated or removed from their employment position. (*Id.*) Finnegan spoke to Ms. Gundy at the internal EEO office, who told her that she did have a job and should report back to work, however, Finnegan did not return to work. Despite repeated phone calls to the EEO office through July and August 2000, Finnegan was unable to obtain further information about her discrimination charge. (*Id.* ¶ 25.)

On September 14, 2000, Finnegan received a letter from the director of the EEO division allegedly informing her that she was terminated for various reasons,

including insubordination and unprofessional behavior. (*Id.* ¶ 26.) The director also claimed that Finnegan resigned on June 6, 2000.

Beginning in August 2000, Finnegan sought reinstatement to her position. (*Id.* ¶ 28.) On January 3, 2001, Finnegan received a letter stating that she was eligible for reinstatement. She was never reinstated despite numerous openings for which the Division of Parole and Probation has allegedly hired individuals with no experience or less experience than Finnegan. (*Id.*)

## II.

### A.

■ Plaintiff fails to allege facts that could establish a prima facie case of discrimination regarding her claim of disparate treatment discrimination. To proceed on a claim of disparate treatment under Title VII, a plaintiff must establish a prima facie case consisting of four elements: (1) the employee is a member of a protected class; (2) the employee was qualified for the job and her performance was satisfactory; (3) in spite of her qualifications and performance, the employee suffered adverse employment action; and (4) the employee was treated differently from similarly situated employees. *See McDonnell Douglas Corp., v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455 (4th Cir.1989); *Nichols v. Caroline County Bd. of Educ.,* 123 F.Supp.2d 320, 325 (D.Md.2000). The first two elements of the prima facie case are undisputed. Plaintiff is a female. Plaintiff also qualified for her position and her performance was satisfactory.

■ Plaintiff has not sufficiently alleged facts that could establish the third element of a prima facie case. An employer's act must alter the terms, conditions or benefits of employment to qualify as an adverse employment action. *Von Gunten v. Maryland,* 243 F.3d 858, 866 (4th Cir. 2001). Plaintiff alleges that she was verbally reprimanded by Evert and that she received a counseling letter on one occasion. Such discipline, without evidence that the verbal reprimands or that a counseling letter could lead to further disciplinary action, such as termination, does not constitute an adverse employment action. *See Nye v. Roberts,* 159 F.Supp.2d 207, 213–14 (D.Md.2001) (finding a written reprimand did not constitute an adverse employment action because "[r]eprimands do not automatically affect the terms and conditions of employment" and the reprimand did "not state that it would lead to her termination or demotion or a decrease in pay"); *see also Von Gunten,* 243 F.3d at 869 ("[T]erms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from a state agency's disciplinary procedures."). Here, Finnegan has not alleged any facts that would show that the verbal reprimands or counseling letter potentially led to termination, demotion, a decrease in pay or similar adverse action.

■ Plaintiff also alleges that she was constructively discharged and thus, suffered an adverse employment action. Constructive discharge occurs when "an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 239, 244 (4th Cir.1997) (*citing Holsey v. Armour & Co.,* 743 F.2d 199, 209 (4th Cir.1984)). A plaintiff must prove two elements: deliberateness of the employer's action and intolerability of working conditions. *See Taylor v. Virginia Union Univ.,* 193 F.3d 219, 237 (4th Cir. 1999). Finnegan has alleged that Evert asked her to leave, which is sufficient to establish that the employer's action was deliberate.

Finnegan has not, however, alleged facts sufficient to show that the working conditions were intolerable. Viewed in the light most favorable to the non-moving party, Finnegan has alleged facts that establish that over a four-month period Evert reprimanded Finnegan on three occasions, (Compl.¶¶ 14, 15, 19), ordered Finnegan to follow her orders in a verbally abusive manner, (*Id.* ¶ 16), told Finnegan that her co-workers did not like her and talked behind her back, (*Id.* ¶ 13), and asked Finnegan to find another job. (*Id.* ¶ 20.) The standard for determining whether working conditions were intolerable is an objective one "of whether a reasonable person in the plaintiff's position would have felt compelled to resign." *Taylor,* 193 F.3d at 237. "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Id.* (citation omitted). Based on the facts alleged by the plaintiff, no reasonable jury could find that a reasonable person in the plaintiff's position would have felt compelled to resign. *See Rankin v. Greater Media, Inc.,* 28 F.Supp.2d 331, 342–43 (D.Md.1997) (holding that although plaintiff was allegedly demoted, was allegedly unfairly criticized for her work, had unfair goals set by her employer, was allegedly unfairly reprimanded, and was threatened with termination, a reasonable person in her position would not have felt compelled to resign); *see also Summit v. S–B Power Tool,* 121 F.3d 416, 421–22 (8th Cir.1997) (holding there was no constructive discharge where employee alleged that she was transferred to second shift, made to supervise temporary employees, given defective parts to work with, reprimanded, and threatened with discharge). Since Plaintiff is unable to establish the third element of a prima facie case, the claim of disparate treatment will be dismissed.

## B.

Plaintiff fails to allege facts that state a claim of hostile work environment. To establish a hostile work environment claim, a plaintiff must show that: (1) the harassment was unwelcome; (2) the harassment was based on her gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Talley v. Farrell,* 156 F.Supp.2d 534, 540–41 (D.Md. 2001).

Plaintiff is unable to establish the third prong of a prima facie case. Several factors are considered when determining the severity and pervasiveness of harassment: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance." *Smith v. First Union Nat. Bank,* 202 F.3d 234, 242 (4th Cir.2000) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Although Finnegan alleges that she was verbally abused for several months, she offers few specific examples. The incidents alleged by Finnegan were infrequent and there is no allegation that the verbal reprimands or comments by Evert were physically threatening or unreasonably interfered with her work performance.[1] "Title

---

1. Finnegan does allege that on one occasion, Evert prevented her from seeing clients, (Compl.¶ 19), however, the incident was temporary and this one incident did not un-

reasonably interfere with Finnegan's work performance to the level necessary to show severe and pervasive harassment. *Cf. Fox v.*

VII does not provide a remedy for every instance of verbal or physical harassment in the workplace." *Lissau v. S. Food Serv., Inc.,* 159 F.3d 177, 183 (4th Cir. 1998). Just as Plaintiff has not alleged facts that support a showing that she suffered intolerable harassment, Plaintiff has not alleged facts that could show that she suffered severe and pervasive harassment. *See Carter v. Ball,* 33 F.3d 450, 461 (4th Cir.1994) ("The existence of a hostile environment cannot be predicated upon acts that are isolated or genuinely trivial.") (citation omitted). Accordingly, Plaintiff's hostile work environment claim will be dismissed.[2]

## C.

Plaintiff does allege facts that state a claim of retaliation. To prove a prima facie case of retaliation, an employee must show that: "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 271 (4th Cir.2001) (*quoting Von Gunten,* 243 F.3d at 863). The first element is clearly met because Finnegan engaged in a protected activity when she filed an internal EEO complaint.

Defendants argue that they did not take an adverse action against Finnegan after she filed her complaint because she had already resigned from her position. However, assuming Finnegan's allegations are true, she was temporarily rehired and then removed from her position. Finnegan alleges that she was told to report to the Towson office on June 19, 2000 and that when she reported to the Towson office she was welcomed back by a manager. Finnegan also alleges that she was on the work schedule for the rest of the week and that she worked for one hour before being removed. Regardless of whether Roberts, an internal EEO office employee, had the ability to rescind her resignation, the allegations indicate that the resignation was temporarily rescinded. Therefore, if the allegations are true, Finnegan was removed from an employment position an hour into work on June 19, 2000 and an adverse employment action took place.[3]

Although temporal proximity between a protected activity and an adverse employment action has been found sufficient to establish a causal connection, *see Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir.1998), a plaintiff must establish that when taking the adverse action, an employer had knowledge that the plaintiff had engaged in protected activity. *See Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir.1998); *Hooven–Lewis v. Caldera,* 249 F.3d 259, 278 (4th Cir. 2001); *Causey v. Balog,* 162 F.3d 795, 803 (4th Cir.1998). Here, Finnegan may not ultimately be able to prove that fact. However, she alleges in her Complaint that "Defendant retaliated against Plaintiff because Plaintiff filed an internal EEO

*General Motors Corp.,* 247 F.3d 169, 179 (4th Cir.2001) (finding a hostile work environment where on a weekly basis the plaintiff's managers verbally berated him, failed to provide him necessary materials to complete his job and exposed him to physical harm at work).

2. Since the plaintiff's claims of disparate treatment and hostile work environment will be dismissed, it is unnecessary for me to address the defendants' argument that a portion of the plaintiff's Title VII claim is time-barred.

3. Additionally, the defendants' failure to rehire Finnegan, although she was eligible to be reinstated and sought reinstatement on several occasions, may constitute an adverse employment action.

claim against the Defendant." (Compl.¶ 34.) That allegation is sufficient to withstand a motion to dismiss. *See Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir.1992).[4]

A separate order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **OR-DERED** that:

1. Defendant's motion to dismiss is **Granted in part** and **Denied in part**; and

2. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.

---

4. Plaintiff has withdrawn her claim for punitive damages because such damages are not available against a government defendant.

*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).