**John C. JANEY,**

v.

**N. HESS SONS, INC., et al.**

**No. CIV.A. DKC 2001–3432.**

United States District Court,
D. Maryland.

June 24, 2003.

Eileen Carr Riley, Jeffrey E. Rockman, Serotte, Rockman and Wescott PA, for defendants.

Gregory E. Taitt, Law Offices of Gregory E. Tait, Largo, MD, for plaintiff.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this employment discrimination case is the motion of Defendants N. Hess Sons, Inc. d/b/a Hess Shoes ("Hess Shoes") and HR Stores, Inc. ("HR Stores") for summary judgment pursuant to FED. R. CIV. P. 56. The issues have been fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being

deemed necessary. For the reasons that follow, Defendants' motion will be granted.

## I. Background

The following facts are uncontroverted or set forth in the light most favorable to the Plaintiff. Plaintiff John C. Janey is an African–American male who was employed by Hess Shoes, under the supervision of Thomas V. Kane ("Kane")[1], during the period set forth in his complaint. Hess Shoes maintained several stores in the Washington, D.C. area, including a store located in the White Flint Mall in Rockville, Maryland, where Janey was employed as a sales associate in the men's department from September 8, 1995 until January 13, 2000. Prior to October 3, 1999, Hess Shoes also operated several small stores known as Rockport Stores, which exclusively sold Rockport products. Plaintiff was the top shoe salesperson in the company every month between 1997 and 1999 and received awards from Hess Shoes management for his exceptional performance.

Plaintiff claims that at least four times between 1995 and 1998, he expressed interest in a promotion to a managerial position to his supervisor, district manager Ervin Richardson, but never received one. *See* Paper no. 26, Ex. 3 (Janey Dep.) at 41–43, 45–46, 51–55. In contrast, Richardson testified that Plaintiff never actually asked him for a promotion, but that Richardson did recommend more than once to Kane that Plaintiff be given a promotion. *See* Paper no. 26, Ex. 4 (Richardson Dep.) at 34, 48–49. The last promotion at the Hess Shoes White Flint store from a sales to a management position occurred in February 1996, when Anne Threatt, an African–American woman, was promoted to

assistant manager of women's shoes. *See* Janey Dep. at 69–70.

On October 3, 1999, Hess Shoes and HR Stores were restructured as separate corporate entities under a common parent, Hess Holdings, Inc., and a management agreement was entered into for Hess Shoes to operate the newly created HR Stores during the liquidation of Hess Shoes stores. The last promotion from sales to management at any Hess Shoes store occurred at the Columbia Mall store on October 24, 1999, when a white female was promoted to assistant manager. *See* Paper no. 24, Ex. 2 (Kane Dep.) at 83. On November 1, 1999, Hess Shoes formally announced its intent to liquidate inventory and close all of its stores over the course of the following few months. Following the announcement, it is undisputed that Hess Shoes made no further promotions. *See* Janey Dep. at 66, 193.

When the announcement was made in October 1999 that Hess Shoes would be closing, Plaintiff asked Richardson if he could "stay on" with HR Stores once Hess Shoes stores closed, and Richardson relayed the request to Kane along with the requests of other Hess Shoes employees who wanted to work at HR Stores. *See* Richardson Dep. at 23, 34–35. Kane denies receiving Plaintiff's request. Richardson stated for the first time in a post-deposition affidavit that Plaintiff made his request on or about December 13, 1999. *See* Paper no. 26, Ex. 2 (Richardson Aff.), ¶ 6. Richardson testified generally in his deposition that HR Stores had vacancies during the liquidation, *see* Richardson Dep. at 27, 36, but also stated for the first time in his affidavit that he had personal knowledge that HR Stores was looking to fill

---

**1.** Kane was formerly Vice President of Operations for Hess Stores and currently serves in

the same position for HR Stores.

vacancies specifically on and after December 13, 1999, when Plaintiff requested a transfer to HR Stores. *See* Richardson Aff. ¶ 7. On January 13, 2000, the Hess Shoes store in the White Flint Mall, where Plaintiff was employed, permanently closed.

Plaintiff claims that on January 20, 2000, at the suggestion of Lawrence Perez, a union representative from the United Food and Commercial Workers Local 400, he sent Kane a letter requesting a "transfer" to an HR Store location. Perez testified in his deposition that he received a copy of the letter, but Kane denies receiving the letter. *See* Paper no. 26, Ex. 6 (Perez Dep.) at 13, 17–18. Plaintiff also testified in his deposition that he re-sent the letter to Kane about one month later. *See* Janey Dep. at 111. Plaintiff asserts that four former Hess Shoes employees were hired to work for HR Stores during the liquidation of Hess Shoes, but that he was denied a transfer because of his race. Kane testified in his deposition that three employees from Hess Shoes obtained permanent employment with HR stores, while another worked for HR Stores temporarily for three weeks but was not offered permanent employment. *See* Paper no. 24, Ex. 1 (Kane Aff.), ¶¶ 13–16. The three permanent employees were hired by HR Stores between November 16, 1999 and December 6, 1999 and included one African–American employee, Ann Threatt. *See id;* Kane Dep. at 88–89.

HR Stores hired no employees, from Hess Shoes or any other source, from December 6, 1999 until May 5, 2000, when it hired Henry Stevenson, an African–American man, as assistant manager of the Towson store, after advertising in newspapers and other publications beginning in late April 2000. *See* Kane Dep. at 94. In May and June of 2000, HR Stores hired a total of six managers from other companies,

three of whom were African–American. *See id.* at 94–95, Ex. 6. Plaintiff was hired by Nordstrom's in March 2000, earning significantly more money than at Hess Shoes, and admits that he did not apply for the openings at HR Stores in May 2000 and thereafter, even after being laid off by Nordstrom's in October 2001. *See* Janey Dep. at 136–37, 139.

Plaintiff filed a charge of employment discrimination with the Human Relations Commission of Montgomery County ("HRC") on October 6, 2000. Plaintiff received a dismissal and right to sue letter from the EEOC on July 16, 2001, notifying Plaintiff of his right to bring a civil action within ninety days of the receipt of the letter. Plaintiff filed a complaint in the Circuit Court for Montgomery County, Maryland on October 12, 2001, and Defendants removed the action to this court on November 19, 2001, based upon federal question jurisdiction. Plaintiff's complaint alleged discrimination on the basis of race and age by Hess Shoes, HR Stores, and Kane. He also alleged that Hess Shoes engaged in a pattern and practice of promoting white employees over African–American employees. The complaint alleged violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, Article 49B of the Annotated Code of Maryland, and Section 27 of the Montgomery County Code.

Defendants moved for dismissal of the complaint, and, on June 4, 2002, the court granted the motion in part. Specifically, the court dismissed Plaintiff's claims of age discrimination, all claims against Kane, claims under Article 49B of the Annotated Code of Maryland, and all claims occurring more than 300 days prior to the filing of Plaintiff's HRC charge on October 6, 2000, rendering all claims arising before December 10, 1999 untimely. Therefore, Plaintiff's remaining claims are that, at some

time after December 10, 1999, Defendants failed to promote him within Hess Shoes and to transfer him to HR Stores because of his race, in violation of Title VII.

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1282, 1286, *citing Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See U.S. v. Diebold,* Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... neces-sarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984), *quoting Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Analysis

In order to prevail on a claim of discrimination under Title VII, a plaintiff must demonstrate that the defendants act-

ed with discriminatory intent. *See Karpel v. Inova Health System Services,* 134 F.3d 1222, 1227 (4th Cir.1998). The plaintiff may prove discriminatory intent either through direct evidence of discriminatory animus or through indirect evidence using the three-pronged burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.* at 1227–28. Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Bryant v. Bell Atlantic Maryland, Inc.,* 288 F.3d 124, 133 (4th Cir.2002). If a plaintiff establishes a *prima facie* case of discrimination through circumstantial evidence, the burden of production then shifts to the defendant to provide a legitimate, non-discriminatory reason for the differential treatment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The plaintiff must then " 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097, *citing Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

Plaintiff's complaint appeared to allege two claims of race-based discrimination: discrimination in promotion by Hess Shoes and discrimination in hiring by HR Stores. His opposition to the motion for summary judgment, however, seems to lump both claims together, creating some confusion about what Plaintiff is actually arguing. Defendants argue in their reply that Plaintiff has apparently abandoned his claim of failure to promote against Hess Shoes because the opposition states that in December 1999 "Mr. Janey asked for a *transfer,* not a *promotion.*" Paper no. 26. However, Plaintiff does not explicitly withdraw the failure to promote claim and, indeed, mentions it several times and invokes the continuing violation doctrine to allow consideration of untimely promotion claims. Thus, the court will not deem the promotion claim to have been withdrawn and will address the merits of that claim, as well as those of the claim of failure to transfer.

## A. Failure to Promote to Managerial Position

■ Plaintiff alleges that Defendants denied him a promotion from sales associate to a managerial position because he is African–American.[2] In order to establish a *prima facie* case of discrimination in the denial of a promotion, a plaintiff must show that: (1) he is a member of a protect-

**2.** Plaintiff appears to bring this claim against both parties, despite the fact that it was Hess Shoes that allegedly denied him the promotions. Plaintiff's argument is essentially that because Hess Shoes and HR Stores shared the same management during the liquidation of Hess Shoes, beginning on October 3, 1999, both served as Plaintiff's employers and are, therefore, proper Defendants. While this argument may be applicable to the failure to transfer/hire claim which allegedly occurred during the liquidation period, *see* footnote 5, Plaintiff does not allege that he was discriminatorily denied a promotion during the liquidation period. Even though HR Stores later shared the same management as Hess Shoes during the liquidation period and may have been Plaintiff's employer during that time, there is no evidence that HR Stores exerted any control over the promotion decisions of Hess Shoes prior to that time. Thus, HR Stores is not an appropriate Defendant for this claim. This argument is irrelevant, however, because Plaintiff has failed to establish a *prima facie* case as to any Defendant on this claim.

ed group; (2) the defendant had an open position for which the plaintiff applied; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of discrimination. *See Evans v. Technologies Applications and Serv., Co.,* 80 F.3d 954, 959–60 (4th Cir.1996); *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994). In the instant case, Plaintiff may only assert claims of alleged denials of promotion arising on or after December 10, 1999 because earlier claims are time-barred pursuant to this court's earlier order. Defendants argue in their summary judgment motion that Plaintiff cannot fulfill either the second or fourth prongs of the *prima facie* case.

■ Defendants claim that Plaintiff cannot fulfill the second prong of the prima facie case because there were no vacant management positions within Hess Shoes for which Plaintiff applied or sought to apply after December 10, 1999. It is undisputed that after November 1, 1999, when Hess Shoes announced its imminent liquidation and store closures, no promotions were made to managerial positions within Hess Shoes. Thus, no promotions occurred after December 10, 1999, the relevant period for this case. Because Hess Shoes undisputedly had no open managerial positions after December 10, 1999, Plaintiff cannot establish that Hess Shoes discriminated against him by failing to promote him. *See, e.g., Tangires v. The Johns Hopkins Hospital,* 79 F.Supp.2d 587, 599 (D.Md.2000) ("Plaintiff was not denied a promotion because there was no existing position for which she could have applied or to which she could have been promoted"). Moreover, Plaintiff himself admits that he did not apply for a promotion within Hess Shoes after the summer of 1998 because he had heard rumors that the store was closing. *See* Janey

Dep. at 42–54, 65. Accordingly, Plaintiff is unable to fulfill the second element of the *prima facie* case.

Defendants also claim that Plaintiff cannot fulfill the fourth element of the *prima facie* case because he was not rejected for a position and the circumstances do not give rise to an inference of discrimination. Specifically, Defendants argue that Plaintiff could not have been, and was not, rejected for a position because, as previously discussed, there was no open position for which Plaintiff applied or sought to apply after December 10, 1999. Because the evidence shows that there was no managerial position that Hess Shoes sought to fill after December 10, 1999, and Plaintiff admits that he never applied for a promotion after that date, it logically follows that Plaintiff was not rejected for a position. Therefore, because Plaintiff has failed to establish the second and fourth elements of the *prima facie* case of failure to promote, Hess Shoes is entitled to summary judgment on this claim.

■ Plaintiff argues in his opposition to the motion for summary judgment that claims of failure to promote arising prior to December 10, 1999 may be properly brought under the doctrine of continuing violation. Under this doctrine, events that occur outside the statutory window are not time-barred if they relate to a timely incident as a " 'series of separate but related acts' amounting to a continuing violation." *Etefia v. East Baltimore Community Corp.,* 2 F.Supp.2d 751, 757 (D.Md.1998), *quoting Beall v. Abbott Laboratories,* 130 F.3d 614, 620 (4th Cir.1997). Plaintiff asserts that because his December 13, 1999 and January 2000 requests to be transferred to HR Shoes were timely filed, they trigger the continuing violation doctrine for the purposes of the alleged 1996, 1997 and 1998 requests for promotion, which he claims are related.

Plaintiff's argument, however, runs contrary to well-established law which holds that the continuing violation doctrine does not apply to discrete discriminatory actions, such as promotions and transfers. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In *National Railroad*, the Supreme Court explicitly stated that

> [d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination ... constitutes a separate actionable "unlawful employment practice." [Plaintiff] can only file a charge to cover discrete acts that "occurred" within the appropriate time period.

*Id.* at 114, 122 S.Ct. 2061. Additionally, this court has held that

> unlike pattern and practice cases or harassment claims, the fact that a person continues to seek promotion does not mean that a continuing violation is present ... "To hold otherwise would ensure that every claim of denial of promotion to a higher paying position would toll the period to file one's charge as long as one merely continued to be employed in the lower position of employment."

*Etefia*, 2 F.Supp.2d at 757, *quoting Soble v. University of Maryland*, 572 F.Supp. 1509, 1516 (D.Md.1983). The allegations of discrimination in this case are clearly discrete acts and, thus, it is inappropriate to apply the continuing violation doctrine here.

In addition, the rationale behind the continuing violation doctrine clearly does not apply to this case. In *Derrickson v. Circuit City Stores, Inc.*, 84 F.Supp.2d 679, 687 (D.Md.2000), this court held that "[t]he frequently-cited rationale for the law of continuing violations is that a plaintiff may not know of his claim until the culmination of a long period of discrimination makes clear the violation." That clearly is not the case here. Plaintiff claims to have been aware of the facts for several years which he believes give rise to a claim of discrimination. For example, he testified in his deposition that when he did not receive promotions in 1996 and 1998, he believed the reason to be because of his race. *See* Janey Dep. at 62–64. Yet, he did not file a charge of discrimination until October 2000. Having asserted that he was aware for several years of the alleged discriminatory basis for the failure to promote him, but yet remained silent, it is inappropriate for him to try to invoke the continuing violation doctrine at this stage.[3] For these reasons, the continuing violation doctrine does not salvage Plaintiff's failure to promote claims arising prior to December 10, 1999.

### B. Failure to "Transfer" to HR Stores[4]

Plaintiff alleges that Defendants failed to transfer him to a job at HR

---

**3.** Moreover, even if the continuing violation doctrine was appropriate in this case, it requires that an actual violation occur within the limitations period. *See Hill v. AT & T Technologies, Inc.*, 731 F.2d 175, 179–80 (4th Cir.1984). However, as already discussed, Plaintiff has failed to establish a *prima facie* case of a violation, in the form of failure to promote, during the period relevant to the case. Nor, as will be discussed, has Plaintiff

established a *prima facie* case of failure to transfer during that period.

**4.** While unclear in the complaint, Plaintiff now characterizes this claim as a failure to transfer, rather than a failure to hire. Despite the different terminology, Plaintiff has essentially alleged that he was not hired to work for the new HR Stores corporation after having lost his job due to the closure of Hess Shoes; therefore, this claim will be analyzed

Stores after Hess Shoes went out of business because he is African–American.[5] In order to establish a *prima facie* case of discrimination in hiring, a plaintiff must prove that: (1) he is a member of a protected group; (2) the defendant had an open position for which the plaintiff applied or sought to apply; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of discrimination. *See Evans*, 80 F.3d at 959–60; *Carter*, 33 F.3d at 458; *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir.1998) (*prima facie* case is the same for failure to hire and failure to promote claims). In the instant case, Plaintiff may only assert claims of denials in hiring (or transfer) arising on or after December 10, 1999 because earlier claims are time-barred. Defendants argue that Plaintiff is unable to satisfy the second, third, and fourth elements of the *prima facie* case.

■ Defendants argue that Plaintiff cannot satisfy the second element because there was no open position for which Plaintiff applied or sought to apply. Specifically, they argue that the last position with HR Stores filled during the liquidation of Hess Shoes was filled on December 6, 1999, and that the next open position did not arise until the spring of 2000, when Plaintiff was already employed by Nordstrom's. Thus, even assuming that Plaintiff did apply for or seek a job during this time period, there were no openings for Plaintiff to fill. Plaintiff contends, citing Richardson's affidavit, that HR Stores did have vacancies which it sought to fill on and after December 13, 1999, when Plaintiff allegedly told Richardson that he would like to "stay on" with HR Stores. *See* Richardson Aff. ¶¶ 6, 7.

Defendants argue that the precise statement in Richardson's affidavit that there were job vacancies on and after December 13, 1999 should be disregarded because it is inconsistent with his sworn deposition testimony, in which Richardson only vaguely recalled that HR Stores hired some employees around the time of the announcement of the liquidation of Hess Shoes.[6] *See* Richardson Dep. at 27, 51–52. Defendants argue that it is a well established principal of law that the non-moving party opposing a summary judgment motion cannot offer an affidavit in opposition to said motion which is inconsistent with prior sworn testimony given in a deposition. *See, e.g., Halperin v. Abacus Technology Corp.*, 128 F.3d 191 (4th Cir.1997),

under the case law for claims of failure to hire.

**5.** Although not a model of clarity, Plaintiff's opposition asserts that both Hess Shoes and HR Stores are proper Defendants for the claim of failure to transfer because they shared the same management, specifically Mr. Kane, during the time period when Hess Shoes was undergoing liquidation, beginning on October 3, 1999. Plaintiff notes that one of the five established factors in determining whether an employer-employee relationship exists is the power to select and hire the employee. *See Mackall v. Zayre Corp.*, 293 Md. 221, 230, 443 A.2d 98 (1982). Plaintiff also notes, citing *Mackall*, that an employee may simultaneously work for two employers. *Id.* at 229, 443 A.2d 98. Because the manage-ment of Hess Shoes had entered into an agreement to operate HR Stores during the liquidation of Hess Shoes, apparently including hiring (or transferring) employees on behalf of the new entity, both entities are proper Defendants in Plaintiff's claim of discriminatory failure to hire/transfer.

**6.** Defendants also seek to have the court disregard for the same reason the statement in Richardson's affidavit that Plaintiff approached him on or around December 13, 1999 to ask to stay on with HR Stores. This discussion is irrelevant, however, because Plaintiff has provided evidence outside of Richardson's affidavit that Janey sought a job with HR Stores in January 2000, if not earlier. *See, e.g.,* Perez Dep. at 13; Janey Dep. at 111.

*abrogated on other grounds by Baird ex rel. Baird v. Rose,* 192 F.3d 462 (4th Cir. 1999). The Fourth Circuit noted in *Halperin* that " '[i]f a party who had been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own testimony, this would greatly diminish the utility of summary judgement as a procedure for screening out sham issues of fact.' " *Id.* at 198, *quoting Barwick,* 736 F.2d at 960. *See also Van T. Junkins & Associates, Inc. v. U.S. Industries,* 736 F.2d 656 (11th Cir.1984) (party cannot create an issue with which to defeat summary judgment with an affidavit that contradicts, without explanation, earlier deposition testimony); *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361 (8th Cir.1983).

■ The statement in Richardson's affidavit about the precise time frame in which HR Stores conducted its hiring is inconsistent with the testimony given in his deposition.[7] Thus, the court agrees that it is inappropriate for Plaintiff to rely on the affidavit to raise a genuine issue of material fact and will disregard the statement in the affidavit that HR Stores had vacancies it sought to fill on or after December 13, 1999. Without that statement, Plaintiff is unable to counter Defendants' showing that there were no vacancies filled between December 6, 1999 and May 2000, when Plaintiff admits he did not seek employment with HR Stores. Thus, Plaintiff fails to forecast sufficient evidence that HR Stores had an open position after December 10, 1999 for which he applied or

sought to apply and, therefore, cannot fulfill the second element of the *prima facie* case.[8]

Defendants also claim that Plaintiff cannot fulfill the fourth element of the *prima facie* case because he was not rejected for a position and the circumstances do not give rise to an inference of discrimination. Having failed to establish that there was an open position after December 10, 1999 for which he applied or sought to apply, it follows that Plaintiff could not have been rejected for such a position. Even if the court did not disregard Richardson's affidavit and found that HR Stores had a vacancy it sought to fill on or after December 13, 1999 (and that Plaintiff applied for said vacancy), Plaintiff still could not establish a *prima facie* case of failure to hire because he has forecast no evidence that the alleged open position was eventually filled by someone, let alone someone outside of Plaintiff's protected class. *See, e.g., Derrickson v. Circuit City Stores,* 84 F.Supp.2d 679, 699 (D.Md.2000). *See also Nash v. Hudson Belk Co.,* 232 F.3d 888, 2000 WL 1421329 (4th Cir.2000) (plaintiff failed to establish a *prima facie* case of discrimination when the open position plaintiff sought was not filled by someone outside the protected class). It is undisputed that no employees were hired by HR Stores (or transferred from Hess Shoes) between December 6, 1999 and May 5, 2000, at which time Plaintiff was already working at Nordstrom's and admits that he was no longer interested in employment. The absence of evidence

---

**7.** The court notes that the date in Richardson's affidavit, December 13, 1999, also suddenly correlates with the time period after December 10, 1999, which is the cut-off date after which claims are timely.

**8.** Defendants argue in their motion for summary judgment that, in any event, Plaintiff was unqualified for a position with HR Stores because HR Stores employees must perform

managerial responsibilities in addition to sales, and Plaintiff, they argue, lacked managerial experience. The court need not address this argument, however, having determined that Plaintiff failed to forecast that there was any position available after December 10, 1999 for which he applied or sought to apply.

that the allegedly open position was filled by someone else, particularly someone outside Plaintiff's protected class, undermines Plaintiff's ability to fulfill the fourth element of the *prima facie* case.

Additionally, the evidence forecast does not suggest circumstances that give rise to an inference of discrimination. For example, it is undisputed that of the three Hess Shoes employees hired by HR Stores on or before December 6, 1999, one was African-American, and that the first person hired by Kane on behalf of HR Stores in May 2000 was Henry Stevenson, an African-American man. In addition, three of the first six managers hired by HR Stores in May and June 2000 were African-American, and one of the three additional former Hess Shoes employees later hired by HR stores was African-American. These facts negate an inference of race discrimination, preventing Plaintiff from satisfying the fourth element even if Plaintiff had been rejected for a vacant position with HR Stores.

For the foregoing reasons, Defendants are entitled to summary judgment as to this claim.

### C. Defendants' Alleged Pattern and Practice of Discrimination

Plaintiff alleges in his complaint that Hess Shoes engaged in a pattern and practice of promoting white employees over African-American employees for managerial positions. The Supreme Court has held that a plaintiff alleging a pattern and practice of discrimination must establish by a preponderance of the evidence that racial discrimination was the defendant's standard operating procedure. *See Int'l Broth. of Teamsters v. U.S.*, 431 U.S.

324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In the instant case, however, Plaintiff has forecast no evidence of a pattern and practice of differential treatment affecting other members of his protected class. The only statistical data possibly offered as evidence demonstrates that 5 out of 14 managers employed by Hess Shoes at the time of closing were African-American, *see* Kane Dep., Ex. 1, and that 7 out of 29 managers promoted by Kane overall were African-American, *see* Kane Dep. Ex. 2. Clearly, this is insufficient to establish that Hess Shoes had a standard operating procedure of discrimination. Plaintiff is required not to merely allege that this is a pattern or practice case, but to offer statistical evidence and anecdotal testimony to demonstrate that widespread discrimination exists, which he has failed to do. Thus, to the extent that Plaintiff is claiming that Hess Shoes engaged in a pattern and practice of discrimination, Hess Shoes is entitled to summary judgment as to that claim.[9]

### IV. Conclusion

For the foregoing reasons, the motion for summary judgment by Hess Shoes and HR Stores will be granted. A separate Order will be entered.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 24th day of June, 2003, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendants' motion for summary judgment BE, and the same hereby IS, GRANTED;

---

9. Plaintiff raises for the first time in his opposition to the motion for summary judgment allegations of unequal pay among white and African-American employees at Hess Shoes.

To the extent that Plaintiff is trying to bring a new claim, he may not do so at this stage having included these allegations neither in his HRC charge nor in his complaint.

2. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Defendants N. Hess Sons, Inc. and HR Stores, Inc., and against Plaintiff John C. Janey; and

3. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.